UNITED STATES of America, By John N. MITCHELL, vice Ramsey Clark, Attorney General, Plaintiff,

v.

UNITED ASSOCIATION OF JOURNEY-MEN AND APPRENTICES OF the PLUMBING AND PIPE FITTING IN-DUSTRY OF the UNITED STATES AND CANADA, PLUMBERS LOCAL UNION NO. 73, INDIANAPOLIS, INDI-ANA, Indianapolis Plumbers Joint Apprenticeship and Training Committee, Defendants.

No. IP 68–C–45.

United States District Court,
S. D. Indiana,
Indianapolis Division.

Aug. 15, 1969.

K. Edwin Applegate, U. S. Atty., Indianapolis, Ind., Patrick J. King, Gregory E. Fischbach, United States Department of Justice, Washington, D. C., for the Government.

Fillenwarth & Fillenwarth, Indianapolis, Ind., for defendant United Ass'n of Journeymen and Apprentices of Plumbing and Pipe Fitting Industry of United States and Canada, Plumbers Local Union No. 73, Indianapolis, Ind.

Baker & Daniels, Indianapolis, Ind., for defendant Indianapolis Plumbers Joint Apprenticeship and Training Committee.

## MEMORANDUM OF DECISION

DILLIN, District Judge.

This cause having regularly come on for trial upon plaintiff's action against defendants Plumbers Local Union No. 73 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada (hereinafter Local 73) and Indianapolis Plumbers Joint Apprenticeship and Training Committee (hereinafter JAC), and the Court having heard the evidence and considered the briefs of the parties, now finds that it has jurisdiction herein, and further finds the following facts and states the following conclusions of law in the form of this memorandum of decision.

The action, commenced February 7, 1968, charges that the defendant Local 73 "has pursued and continued to pursue a policy and practice of discriminating against Negroes, on account of their race, with respect to employment opportunities in the plumbing trade within its jurisdiction." Plaintiff also alleges that the defendant JAC has pursued and continues to pursue "a policy and practice of discriminating against Negro applicants for admission to the apprenticeship program on account of their race." Such alleged acts are said to violate Title VII of the Civil Rights Act of 1964 (78 Stat. 253), Title VII, §§ 701–716; 42 U.S.C.A. §§ 2000e to 2000e–15, and particularly 78 Stat. 261, Title VII, § 707; 42 U.S.C.A. § 2000e–6.

Local 73 is a labor organization engaged in an industry affecting commerce within the meaning of 42 U.S.C. § 2000e(d), (e). JAC is a joint labor-management committee controlling apprenticeship within the meaning of 42 U.S.C. § 2000e–2(d). The Attorney General is authorized to institute this action. 42 U.S.C. § 2000e–6.

Local 73 is a labor organization consisting of an unincorporated association of members engaged in the plumbing construction industry in the State of Indiana in the following counties: Marion, Hancock, Shelby, Johnson, Morgan, Hamilton, Boone, Hendricks and Putnam (east of Road 43, except for territory on a five-mile radius from Courthouse), including Camp Atterbury. The Union's offices are in Indianapolis, Indiana.

According to the official 1960 census, of which the Court takes judicial notice, the total population of the territory of Local 73 was approximately 965,942 (estimating a population of 8,000 for the part of Putnam County described). Of this number, slightly over 100,000, or 10.35 per cent, were Negro, virtually all concentrated in Indianapolis. From January 1, 1960, until March 14, 1968, 1,725 persons worked in the jurisdiction of Local 73; none of them were Negro. Prior to July 1, 1968, no Negro had ever worked as a plumber for a Union contractor within the jurisdiction of Local 73. Membership of Local 73 on March 14, 1968, was 426, all white. At the same time, there were approximately 30 to 35 Negro plumbers in the City of Indianapolis, half of whom held licenses from the City as either master or journeymen plumbers.

Very few Negro plumbers ever applied for membership in Local 73. Those who did, both before and after July 2, 1965, the effective date of the Civil Rights Act of 1964, were stalled along on one pretext or another so that none ever appeared before the examining board for admission. The reputation of Local 73

in the Negro community was that it was a "whites only" local, which effectively discouraged the Negro applicants from pursuing their applications vigorously, and also discouraged other Negro plumbers from applying in the first place.

Local 73 is a party to a collective bargaining agreement with 35 plumbing contractors, pursuant to which it has the exclusive right to refer applicants for employment as plumbers. Contractors are permitted to hire their own men if the local is unable to supply a request within 48 hours, but men so hired are then sent to the local for clearance. The local has not had enough members to meet the demand for many years, and has adopted three methods to meet the shortage: (1) it has advised the United Association of the availability of work in the Indianapolis area, and has utilized "travelers" (members of other United Association locals) who have entered its jurisdiction, (2) it has recruited non-union plumbers for referral and possible membership, and (3) it has issued work permits ("white cards") to workers without sufficient experience to qualify as journeymen. Of several hundred men so obtained since July 2, 1965, all were white until July, 1968, some months after the filing of this action. Prior to July, 1968, Negro plumbers were not told that they could work as "white card" men, nor referred to union contractors, nor recruited for membership in the local; the reverse was true of whites.

When Local 73 finally determined to admit Negro members in mid-1968, the action was so novel that it was thought necessary to make a minute to the effect that the local was to be integrated. This action created dissension on the part of some members, which persists, at least to some extent, at this time.

From the foregoing facts it is clear, and I find, that Local 73, from July 2, 1965, until after the date of filing this action, followed a policy and practice of refusing to refer Negro plumbers, of failing to recruit Negro plumbers for referral or membership on the same basis as white plumbers, and of refusing to accept Negroes as journeymen members.

Turning our attention to the Joint Apprenticeship and Training Committee we find that the JAC is a joint body of five representatives and one alternate from Local 73, and five representatives and one alternate from the Mechanical Contractors' Association of Central Indiana, Inc. (hereinafter MCA). It administers the apprenticeship program for the union and the MCA, establishes standards for the selection of candidates for the apprenticeship program, and determines which persons shall be admitted to the program. The purpose of the program is to train apprentices to become journeyman plumbers. After acceptance, apprentices are indentured to the JAC, and are enrolled in a five-year program involving on-the-job training and related classroom instruction.

Until after the filing of this action, only two Negro youths ever applied for the JAC program, and only one, Aaron Sayles, made his application after July 2, 1965. Neither was accepted. The first youth, Samuel Greene, who had a vocational certificate in plumbing from an Indianapolis high school, applied in 1961 and was told there was no vacancy. However, three months later JAC selected five white applicants to take the aptitude test, three of them having applied subsequent to Greene. All were accepted. Greene was never afforded the opportunity to take the test then or later. He was discriminated against because of his race. Sayles, however, was given the test in 1967, at which time it was administered by a nonpartisan agency. He failed it rather badly. His failure to be accepted by JAC may not be ascribed to discrimination.

Prior to July 2, 1965, it was the practice of the JAC to make marginal notations on virtually all of the applications of apprentice applicants indicating whether they were related to a union member or union contractor; or that they had no relatives in the union. In each year from 1960 through 1967, rela-

tives of union members have fared significantly better in gaining acceptance by JAC than those without such connections: Prior to 1965 virtually all apprentices were recommended either by a relative or a union contractor; in 1965, 1966, and 1967 approximately 80 per cent of all related applicants were accepted, but only approximately 50 per cent of those without relationship. Some of the discrepancy may be justified by the test scores, lower motivation of nonrelated applicants, and the like, but on the whole it is fair to say that nepotism has consistently played a part in the selection of apprentices.

Since Local 73 has no Negro members because of its long history of racial discrimination, the preferential treatment accorded related applicants restricts the opportunities of Negro applicants for the JAC program.

Local 73 has a formal agreement with the MCA to provide summer employment for students. This summer program is limited to sons of union members, hence denying Negroes the opportunity to gain JAC-approved work experience. The JAC takes this summer work experience into consideration when evaluating apprentice applicants. This practice likewise restricts the opportunities of Negro applicants for the JAC program, for obvious reasons.

Prior to 1967, the JAC took no steps to disseminate information concerning the apprenticeship program other than by word of mouth. Because there were no Negro members of the JAC, MCA or Local 73, the JAC's failure to disseminate information other than by word of mouth had the effect of preventing Negroes from obtaining information concerning the program. In 1967, 76 per cent of the apprentice applicants learned of the program through union members or union contractors. The local's discriminatory reputation in the Negro community coupled with the failure of the JAC to disseminate information concerning the program accounts for the small number of Negroes applying to the apprenticeship program.

■ Based upon the foregoing findings as to the JAC, I conclude that prior to the institution of this action, the JAC had a policy of excluding Negroes from the apprenticeship program.

■ Commencing in July, 1968, and continuing to date, Local 73 has made a substantial beginning in reversing its former intentional and illegal practices of racial discrimination. Three Negroes have now been admitted to membership in the local. Eight others are working for union contractors as "white card" holders, and presumably will be received into membership in the local at such time as they qualify. The qualifications for membership are reasonable, so long as they are applied in a nondiscriminatory manner. I do not agree with the Government that the requirement that an applicant have a journeyman's license from the City of Indianapolis should be waived as to Negro applicants. The City has an interest in the plumbing trade from the standpoint of the public health and safety, and I can hardly direct Local 73 to ignore a City ordinance in an action to which the City was not made a party.

The JAC has likewise made substantial progress in eliminating discrimination since this suit was filed. Specifically, it has adopted partially objective and reviewable procedures for the evaluation and selection of apprentice applicants which provide for the assignment of point values for the applicant's educational background, test results and work experience. An applicant may be awarded a maximum of 103 points for these factors. In addition, however, each member of the JAC can award a maximum of 25 points based on his impression of the applicant, the average being added into the applicant's final score. The basis for awarding points for the interview is subjective and non-reviewable, and is for such reason less than satisfactory. The JAC has also made a much more diligent effort to secure Negro applicants, with the result that four applied in 1968. (Of the four, three failed to follow through for rea-

sons of their own, and the other was accepted.)

■ Considering that reformation on the part of the defendants was delayed until well after the filing of this action, and that future officers of Local 73 and members of the JAC may not carry on with the present improved practices, particularly since the integration of Local 73 was by no means greeted by the hosannas of all of its membership, affirmative relief is necessary notwithstanding the improvement. Local 53 of Int. Ass'n of Heat & Frost I. & A. Wkrs. v. Vogler, 5 Cir., 1969, 407 F.2d 1047; Dobbins v. Local 212, International Bro. of Elec. Wkrs., S.D.Ohio, 1968, 292 F.Supp. 413; United States v. Louisiana, E.D.La., 1963, 225 F.Supp. 353, aff'd 1965, 380 U.S. 145, 85 S.Ct. 817, 13 L.Ed.2d 709.

## ORDER

It is therefore ordered, adjudged and decreed as follows:

1. Defendant United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, Plumbers Local Union No. 73, its officers, agents, employees, successors, and all persons in active concert or participation with any of them in the administration of Local 73 are permanently enjoined from engaging in any act or practice relating to employment opportunity which has the purpose or the effect of discriminating against any individual on the basis of race. They shall not exclude or expel any individual from membership, or limit, segregate or classify membership, or fail or refuse to refer an individual for employment, on the basis of race or in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment because of such individual's race. They shall receive and process applications, admit members, affiliate with contractors, test, refer for employment, and otherwise administer all the affairs of defendant Local 73 without regard to race, and so as to insure that no individual is excluded from work opportunities on the basis of race.

## MEMBERSHIP

2. Local 73 shall offer examinations for direct journeyman membership at least once every three months for the next two years whenever there are applicants for journeyman membership. Each applicant who meets the prerequisites for taking the examination shall be given at least one week's written notice of the date and place of the examination and the nature of the examination.

3. Local 73 shall continue to offer the journeyman examinations for membership used by the union during the year 1968. Such examination shall be administered orally to those applicants who are unable to read.

4. Local 73 shall admit applicants to membership who meet the prerequisites for taking the examination and successfully attain a passing grade on the examination and pay the necessary initiation fees for journeyman membership. No vote by membership or any constituent board of Local 73 shall be required prior to the admission of persons to membership during the next two years.

5. Local 73 shall not alter or change the employment or referral rights of an individual, based on the individual's failure to achieve a passing grade on the membership examination. The applicant shall be allowed to continue his present employment for a union contractor, if any, and shall be referred out on the same basis as if he had not taken the membership examination.

6. Local 73 shall prepare a brief statement of its admission requirements and procedures, copies of which shall be furnished to the United States, and all applicants for membership, and a copy of the same shall be prominently posted in Local 73's Union Hall.

7. Local 73 shall offer each of the Negro plumbers presently licensed by the City of Indianapolis, and who is not presently a member of the Local, the op-

portunity to apply for journeyman membership in the union by personally contacting those persons and describing the benefits of union membership. The names and addresses of such individuals appear on Appendix A hereof. Further, any such Negro not desiring membership shall be offered referral out of the union on a nondiscriminatory basis as a "white card" holder. The same invitation shall be tendered to Wilbert L. Smith, 2125 Coil Street, Indianapolis, contingent on his obtaining a City license.

8. Local 73 shall maintain for two years after any examination complete records of the examination, including, but not limited to, all applications for membership, copies of all notices sent to applicants, copies of any replies received from applicants, and copies of the examination administered and answer sheets for the examination. Such records shall be made available for inspection and copying by plaintiff United States upon reasonable intervals during regularly scheduled business hours or at other mutually convenient times. Every three months, for the next two years, Local 73 shall report to the Court and the plaintiff United States the name, address, race and date of application of each applicant for membership, and the action taken with respect to him.

## REFERRAL

9. Local 73 shall abide by the terms and conditions of the collective bargaining agreement dated June 10, 1968, and signed by Local 73 and the MCA in referring applicants for employment.

10. Local 73, for the next two years, shall refer all applicants for employment on a first-in first-out basis, regardless of union membership, or the passage of a union examination. Applicants shall be referred in the order that they appear in the referral register and shall be offered referrals to three contractors before they lose their position in the referral register.

11. Local 73 shall require all persons who enter its office to seek employment to sign the referral register. The referral register shall contain the name, date of registration and union affiliation, if any. The information so described above shall be recorded by each person who is an applicant for referral. Local 73 shall only refer those persons who have applied at the union office and signed the referral register.

12. Local 73 shall permit all persons who enter its office to seek employment to sign the referral register and file or update an application for employment during the normal working hours, whether or not any particular union official is present.

13. Local 73 shall require all persons who enter its office to seek employment, who are not members of Local 73, to complete and file with the union an application for employment. Such application shall contain at least the name, address, telephone number, race, age, union affiliation, if any, summary and explanation of plumbing experience of the applicant. The application shall then become a permanent part of the applicant's file, and shall be updated, if necessary, upon each subsequent request for referral by the applicant. The union shall refer only those persons who have on file such an application for employment.

14. Local 73 shall specifically note on the application the reason for refusal to refer any applicant and each applicant refused referral shall be specifically informed that he will not be referred by Local 73 and the reason that he will not be referred.

15. The union shall maintain a register—called the Contractor's Register—of all requests by contractors for employees. The register shall contain the name of the contractor, the date of the request, the number of employees requested, the special skills requested, if any, and the names, race, union affiliation, if any, dates of referral, and whether the persons referred were hired or refused employment by the contractor.

16. Local 73 shall prepare a brief statement of the operation of its refer-

ral system, copies of which shall be furnished to the United States, all applicants for employment, and a copy of which shall be posted prominently within the offices of Local 73.

17. Local 73 shall advise the Indiana Employment Security Division of the requirements and procedures for referral, and shall request that they refer applicants to Local 73 for referral to union contractors. Local 73 shall advise the Indiana Employment Security Division on the first and 15th of each month of their expected manpower requirements.

18. Each 30 days, for the next two years, the defendant shall report to the plaintiff United States the number of applicants for referral by race, the number referred by race, and in the case of each Negro applicant not referred, his name, address and telephone number, and the reasons why he was not referred. Such records shall be made available for inspection and copying by plaintiff United States upon reasonable intervals during regularly scheduled business hours or at other mutually convenient times.

## APPRENTICESHIP

19. Defendant Indianapolis Plumbers Joint Apprenticeship and Training Committee, its officers, agents, employees, successors, and all persons in active concert or participation with them in the administration of the apprenticeship program are permanently enjoined from engaging in any act or practice relating to employment opportunity which has the purpose or effect of discriminating against any individual on the basis of race. They shall receive applications, test, evaluate, select applicants, recruit, and otherwise administer the plumbing apprenticeship program without regard to the race of applicants and participants and so as to insure that no individual is subjected to racial discrimination in admission to or participation in the program.

20. The JAC shall continue to follow the standards for the selection of ap-

prentices adopted by the Committee in 1968, and shall assign points based on the factors contained therein, except that the Committee shall amend their standards so as to provide no more than 15 per cent of the total possible number of points for the oral interview, and shall make the interview more objective by assigning maximum points to be awarded in each category set out in Standard 3(d), appearing on page 5 of the 1968 Standards.

21. If changes shall be necessitated in the standards, then the party desiring the change shall provide the Court and the opposing party with 30 days' notice that such changes are desired. Unless the opposing party files an objection to the proposed change within 15 days with this Court, the change may be put into effect. If agreement is not reached between the parties within five days after any such objection, the parties shall each file with the Court a memorandum setting forth the proposed change in the system and the reasons necessitating the change, or the reasons opposing the change, for direction as to whether such change shall be put into effect.

22. The defendant JAC shall take steps to apprise minority group youth residing in the jurisdiction of Local 73 of the qualifications and procedures for admission into the plumbing apprenticeship program. Specifically, the defendant JAC shall advertise for apprentice applicants in at least one local Negro newspaper, at least twice within 30 days, mail informational circulars, explaining application procedures to the guidance counselors of all high schools and junior high schools in Marion County, Indiana, including evening divisions, and to the organizations listed in Appendix B. These procedures shall be repeated in the spring of 1970 and 1971. In addition, such high schools and organizations should also be furnished with apprentice application forms with instructions that an applicant can complete it and mail it to the JAC. This same procedure shall be repeated in the spring of 1970 and 1971.

23. A representative of the defendant JAC shall personally contact the appropriate persons at Crispus Attucks High School, Shortridge High School, George Washington High School, H. E. Wood High School and Arsenal Technical High School advising them of the Plumbers Joint Apprenticeship Committee program, and participate, if permitted to do so, in Career Day exercises and/or other programs designed to acquaint and interest high school and trade school students in the plumbing trade and the Joint Apprenticeship Committee program for the 1969, 1970 and 1971 apprenticeship classes.

24. The Committee shall file, in writing, a report of its activities, describing in detail the actions taken in conformity with paragraphs 22 and 23 of this order. In addition, the report shall state the number of persons who filed applications for the program during that time period and the names, addresses and telephone numbers of all Negro applicants. The reports shall be filed with the Court and submitted to the Department of Justice once every 60 days from the date of the entry of this order until the selection of the 1971 apprenticeship class.

25. The JAC shall maintain all records dealing with apprentice applicants for a two-year period, including an apprentice applicant log reflecting the name, race and date of birth of each applicant, and dates of completion of each step in the application procedure, and the disposition of each application.

26. The defendant JAC shall make available to the plaintiff at any and all reasonable times all records pertaining to the selection of apprentices.

### OTHER

27. The United States shall be entitled to recover the costs of this action from the defendants.

28. This Court shall retain jurisdiction of this action for such further relief or modification of this order as may be required.

All of which is considered, ordered and adjudged this 15th day of August, 1969.