**Martin MARQUEZ, Plaintiff-Appellant,**

v.

**OMAHA DISTRICT SALES OFFICE, FORD DIVISION OF FORD MOTOR COMPANY, Defendant-Appellee.**

**No. 20524.**

United States Court of Appeals, Eighth Circuit.

March 31, 1971.

Matthes, Chief Judge, concurred in result.

Seb Caporale, Omaha, Neb., Shrout, Lindquist, Caporale, Brodkey & Nestle, Omaha, Neb., for plaintiff and appellant.

Joseph R. Moore, Omaha, Neb., of Gaines, Spittler, Neely, Otis & Moore, Omaha, Neb., for defendant-appellee.

Before MATTHES, Chief Judge, LAY and BRIGHT, Circuit Judges.

LAY, Circuit Judge.

This is a fair employment practice case arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e et seq. After trial to the district court, judgment was entered for the defendant and the action dismissed, 313 F.Supp. 1404. Plaintiff appeals. We reverse and remand to the district court for reconsideration in light of this opinion.

The plaintiff Martin Marquez is of Mexican descent. He has worked for the Omaha, Nebraska, District Sales Office of the Ford Motor Company since December 1, 1949. He complains that he has not been promoted by the defendant because of his national background, although qualified for promotion, over a period of the last fifteen years. On January 3, 1967, the company promoted another employee to manager of his department who allegedly possessed less experience than plaintiff.

Marquez urges that the defendant violated the Civil Rights Act of 1964 in failing to promote him because of his national origin. On January 27, 1967, Marquez filed a complaint before the United States Equal Employment Oppor-

tunity Commission. Upon investigation the EEOC determined there was "reasonable cause" to believe that the company had illegally discriminated against the plaintiff. Notice was given plaintiff by EEOC of its attempt to eliminate the discriminatory practice by conciliation. Plaintiff alleges that defendant failed to voluntarily comply with the conciliation efforts of the EEOC.[1] Plaintiff received the 30 day statutory notice and brought suit. Plaintiff specifically seeks back pay from the date of the Civil Rights Act of 1964, promotion to department head (Class 9) and attorneys fees pursuant to § 2000e–5(k).

■ The trial court determined that plaintiff had fully exhausted his administrative remedies and that the court had jurisdiction to determine the merits. This jurisdictional basis is challenged by the defendant on appeal. We are satisfied that jurisdiction exists.[2] The trial court further ruled that the plaintiff failed to establish any evidence of racial discrimination by the defendant and denied relief.

We hold that the district court erred in finding (1) that the plaintiff was not entitled to rely on any past discrimination which may have presently precluded him from being eligible for promotion and (2) that the record was void of any evidence of discrimination past or present on the part of Ford Motor Company.[3]

In its memorandum opinion the district court found that Ford Motor Company's policy required prior training in Class 7 or 8 field experience to advance an employee to one of its Class 9 managerial positions. The evidence is undisputed that Ford's nationwide policy is that an advancement is never made from a Class 6 to a Class 9. Based on this evidence the district court viewed the company's failure to advance Marquez solely as one of "business necessity" and without discrimination. We accept this evidentiary premise and view this promotional policy as neutral on its face and nondiscriminatory. However, we hold that the trial court's conclusion that Marquez was *therefore* not discriminated against in the application of that policy does not necessarily follow. United States v. Sheet Metal Workers, infra, 416 F.2d 123 at 131–132.

■ It is true that the Civil Rights Act of 1964 is not violated where an employer's *present system of promotion* excludes consideration of an employee because he is deemed not qualified solely by reason of lack of ability or experience. However, where an employer's present advancement policy serves to

---

1. After the EEOC issued its letter, the defendant on separate occasions offered a promotion to the plaintiff to the next highest grade, Class 7, by way of conciliation. Plaintiff declined because he feared it would affect his present claim. But see Jenkins v. United Gas Corp., 400 F.2d 28 (5 Cir. 1968). As of the date of trial defendant had placed the plaintiff in a nonpromotional status because of his refusal to accept the conciliatory promotion.

2. The defendant alleges that the plaintiff has failed to *prove* that he filed his complaint with the EEOC. Yet defendant admits that plaintiff received the "30 day letter" from the EEOC after its failure to achieve voluntary compliance. Additionally plaintiff pleaded that he filed his complaint with the EEOC. Defendant denied the complaint was proper in that it was not filed "under oath." Defendant earlier had attacked the district court's jurisdiction on the ground that the complaint filed with the EEOC was premature because of plaintiff's failure to exhaust his state remedies. This court is at liberty to examine the entire record and pleadings to test the jurisdictional bases. We find no merit to defendant's jurisdictional contention.

3. The district court observed:
"[I]t should be made perfectly clear that the Court is not saying that there was any discrimination prior to the 210 day period but that had there been any *it will not be considered as a basis* for now holding that plaintiff is entitled to *the position of manager* of the planning and analysis department of the district sales office or *for any other type of relief.* In fact even if past discrimination were to be considered this record *is void* of any discrimination past or present on the part of Ford against Mr. Marquez." (Emphasis ours.)

perpetuate the effects of past discrimination, although neutral on its face, it rejuvenates the past discrimination in both fact and law regardless of present good faith. While it is true, as the trial court pointed out, that the Act was intended to have prospective application only, relief may nevertheless be granted to remedy present and continuing effects of past discrimination. United States v. Dillon Supply Co., 429 F.2d 800 (4 Cir. 1970), Griggs v. Duke Power Co., 420 F.2d 1225 (4 Cir. 1970), reversed on other grounds 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971); United States v. Sheet Metal Workers International Assn, Local 36, 416 F.2d 123 (8 Cir. 1969); Quarles v. Philip Morris, Inc., 279 F.Supp. 505 (E.D.Va.1968).[4]

Marquez was hired by defendant's Omaha District Office in 1949 in a "Steno A" position. He advanced to a Sales Planning Analyst by 1956.[5] It is after this point that plaintiff asserts that the company wrongfully withheld his advancement in violation of the Act. Since 1956 Marquez has not advanced beyond this position. He has remained in a Class 6 status for the past 15 years. Prior to the complaint filed in 1967 with the EEOC, Marquez's job performance ratings by his company supervisors had been excellent. These reports praised his initiative, personality, cooperation, analytical mind, and knowledge of the job. In 1961, his superior rated him as promotable to Administrative Assistant, and in 1962 he was adjudged to be promotable to Field Manager. Nevertheless, he was kept at his same position of a Sales Planning Analyst and in April 1963, for no reason which appears on the record or in his employment files, he was taken off the promotable list so that he was no longer eligible to advance to a higher classification.

The testimony is undisputed that on three occasions he was the only eligible employee denied the opportunity to attend company training programs, while other men similarly situated were sent. The record is further undisputed that Marquez's failure to advance and receive the field experience in Class 7 or Class 8 *essential to further advancement* was caused by his nonpromotional status. If his nonpromotional "frozen" status was caused in part by racial discrimination, the company's policy in refusing to consider him for any promotion is inherently invalid and discriminatory to him.

■ The trial judge found that there was no evidence to establish any past or present discrimination practiced by Ford Motor Company. For the reasons discussed we hold this conclusion fails to give proper weight to relevant factors which establish a prima facie case of racial discrimination.

While this case was not tried as a typical pattern discrimination case, the past record of Ford Motor Company's actual experience in hiring members of a minority race in both the Omaha district and the region of which this district is a part may be considered in evaluating plaintiff's claim of discrimination as to him. Until the filing of the present complaint Marquez was the only noncaucasian of the defendant's 55 employees in Omaha.[6] The greater Omaha area approaches one-half million people, over ten percent of which are Negroes, Indians and Mexicans. The evidence shows

---

4. Although these cases are factually distinguishable in that they involve group discrimination, the fundamental principle involved is clearly applicable. The district court distinguished these cases on the ground that past discrimination *permanently* locked employees into inferior positions. This does not appear to be a substantial distinction. In any event, since Marquez has not been promoted for 15 years and has been held in a nonpromotable status for several years, his position has all the aspects of permanence.

5. When plaintiff achieved the position of Sales Planning Analyst it was classified as a Grade 7. Sometime around the beginning of 1961, however, the position was reclassified as a Grade 6.

6. After plaintiff's complaint to the EEOC defendant has hired two Negroes in the Omaha sales area.

that during the same period (1950–1967) Ford has hired only two Negroes in its entire sales region. One Negro was hired in St. Louis and another employed in Denver, both within the same sales region as Omaha. On this record it is not necessary to determine whether "pattern discrimination" per se has been established.[7] Nevertheless, these facts do serve as evidentiary support for plaintiff's claim of racial discrimination in the instant case. Allegation of class injury is not necessary to show violation of the statute. The statute makes unlawful an employer's discrimination " * * * against *any individual* with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin * * *." 42 U.S.C.A. § 2000e–2(a) (1). (Emphasis ours.) The fact that Ford Motor Company has undertaken a nationwide campaign to improve its minority ratio in employment practices is to be commended. However, present good faith compliance is no defense as to past practices which have resulted in present damage.

> "The Company's lack of discriminatory intent is suggested by special efforts to help the undereducated employees * * *. But Congress directed the thrust of the Act to the *consequences* of employment practices, not simply the motivation." Griggs v. Duke Power Co., 401 U.S. 424, 91 S. Ct. 849, 854, 28 L.Ed.2d 158 (1971). (Emphasis in original.)

Cf. Jones v. Lee Way Motor Freight, Inc., 431 F.2d 245 (10 Cir. 1970); Parham v. Southwestern Bell Telephone Co., 433 F.2d 421 (8 Cir. 1970).

Since Marquez's early days with the company, his work performance has been continually appraised by various supervisory personnel. These appraisals contain no disparaging remarks or data concerning his ability to advance or to perform his various assignments. On the contrary, each evaluation was very favorable. Typical of these documentary reports is the one written in October 1960 in which a merit raise was recommended because of the excellence of his performance:

> "Mr. Marquez has performed his assignments as Sales Planning analyst in an excellent manner. He has displayed ability to handle a maximum workload with minimum errors. Mr. Marquez assists the District Planning Manager in developing the monthly Car and Truck Programs and consistently displays sound judgment in using available statistical information. He has an excellent analytical mind and has demonstrated a thoroughness in all analytical assignments. He maintains an excellent follow-up on reports which are consistently submitted on time. New employees assigned to the department are placed under Mr. Marquez's supervision for departmental training. This training is carried out in an excellent fashion and his ability to train personnel has been demonstrated by promotions of four people from this department to District Sales Representative. Mr. Marquez has an above average knowledge of all of the functions of his position and in view of his above average performance, a merit increase is recommended." [8]

On February 14, 1961, Marquez was placed on a list as being eligible for promotion. However, by April 1963 he had not been offered a promotion and was then removed without stated cause or reason to a nonpromotional status. Between 1960 and 1963 company reports continued to reflect praise of him for excellence in work performance and ability. Marquez's personnel file is completely silent as to the reasons for his

---

7. Cf. Parham v. Southwestern Bell Telephone Co., 433 F.2d 421 (8th Cir. 1970).

8. Plaintiff did not receive the merit increase he was already at the top pay scale of a Class 6 employee. All of his salary increases since 1960 have been cost of living increases and do not represent salary increases based on promotion or merit advancement.

sudden nonpromotional status in the face of outstanding evaluations. The defendant offered no evidence at trial to explain this change.[9]

The undisputed and documented proof relating to Marquez's outstanding job characteristics, the record of no promotion for Marquez since 1956, the undisputed evidence that several men of equal caliber had received promotions and been assigned additional job training programs throughout these years, the unexplained removal of Marquez from a promotional status in 1963, the absence of any rational reason for this removal and for his nonpromotion,[10] and the marked absence of minority employees in the district and region, constitute substantial proof of racial discrimination in the instant case. Cf. Johnson v. Branch, 364 F.2d 177 (4 Cir. 1966), cert. denied 385 U.S. 1003, 87 S.Ct. 706, 17 L.Ed.2d 542 (1967); Gates v. Georgia-Pacific Corp., 326 F.Supp. 397, 2 FEP Cases 978 (D.Ore.1970). Racial discrimination will seldom be admitted by any employer. Documentary evidence relating to an employee's nonpromotional status serves to corroborate a claim of racial discrimination. This evidence becomes particularly significant when no rational reason is offered to rebut the telling inference otherwise established.

 The district court found that the refusal to advance the plaintiff to a Class 9 was based upon a "business necessity" and not racial discrimination. On this record it is established that an employee cannot properly serve in a Class 9 position without prior field experience in a Class 7 or 8 position. To advance a person beyond his present capacity and training to specialized work, particularly in a managerial capacity, would not only be detrimental to the company but to the individual's future employment opportunities as well. In addition, there is strong evidence in the instant case to suggest that even if plaintiff possessed the necessary field experience it is only speculative whether he would have been chosen as a Class 9 general manager from the number of men who shared the same experience and had the same opportunity to advance. As defendant's manager fittingly described, "the pyramid narrows, the competition becomes intense." We recognize that there are many subtleties involved in the assessment of personal characteristics entering into a company's advancement of individuals to leadership and executive positions. These decisions turn on many relevant considerations, with prior experience constituting merely one factor. We also recognize that the Civil Rights Act of 1964 is not de-

9. The company did offer testimony concerning Marquez's Class 9 managerial ability by one of his former supervisors, a Mr. Vasek. At trial Mr. Vasek testified he had observed on occasion that Marquez's "hands sweated" and that on occasion Marquez had made some mistakes on records assigned to him. He also said that Marquez did not always properly delegate authority. This evidence is equivocal at best when considered with Mr. Vasek's written reports in 1964 and 1965 to the company wherein he had observed that Marquez's "quality and quantity of work performed is excellent." In these years while serving as planning and analyst manager, Mr. Vasek's reports contained no disparaging comments. He rated Marquez's "initiative," "presentation of ideas," "knowledge of job," "creativity" and "co-operation" as "significantly exceeding normal requirements." Mr. Vasek listed

as meeting "normal requirements" Marquez's "judgment," "analysis of problems," "dependability," "personality" and "leadership." At trial Ford's Omaha manager until 1969, Mr. Novacek, likewise presented a complimentary description of Marquez's overall work performance and leadership ability.

10. Compare Aiken v. Commission for Human Rights, 69 LRRM 2128 (N.Y. Sup.Ct.1968). See also the language of Williams v. Sumter School Dist. No. 2, 255 F.Supp. 397 (D.S.C.1966), where the court pointed out: "It is obvious that plaintiff was refused, denied, reemployment because of her civil rights activity. The record reveals no other possible motive. *The refusal of the Board to specify is silent witness to the discrimination.*" 255 F.Supp. at 403. (Emphasis ours.)

signed to serve members of a minority race to obtain special privilege or right because of race, creed or color. Reverse discrimination is equally prohibited by the Act. Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). We therefore join in the district court's rejection of plaintiff's claim that he be immediately advanced to Class 9 manager.

Contrary to the defendant's reasoning, however, the above considerations do not, *ipso facto*, preclude Marquez from obtaining any relief. The district court may fashion the remedy to fit the circumstances. Parham v. Southwestern Bell Telephone Co., supra. Equitable considerations should be applied to correct any harm caused. Cf. Smith v. Board of Education of Morrilton Sch. Dist. No. 32, 365 F.2d 770, 783 (8 Cir. 1966). On the present record there is substantial undisputed evidence to justify plaintiff's advancement to a Class 7 field manager or to Class 8 as an administrative assistant. The fact that the plaintiff did not pray for this relief is not controlling. The record shows Marquez had satisfactorily carried out a field manager's job in the early 1950's without any difficulty. The record further demonstrates that a minimum of two to four years field experience are necessary to advance to Class 9. We *may safely assume that a field manager in a larger area or an administrative as-sistant in Class 8 would probably re-quire less experience.* The fact that plaintiff was previously considered eligible for administrative assistant in 1963, then a Class 8 position, is persuasive here. We feel justice will be better served for the district court to reconsider the entire record in view of the principles herein discussed. In fashioning a remedy the district court is at liberty to consider additional evidence as to whether opportunities for advancement in Class 7 or Class 8 have arisen in the intervening years since the passage of the Civil Rights Act. Any award for back pay should not, however, antedate the filing of the complaint.

For the reasons discussed we find there exists sufficient evidence to establish a prima facie case which was not given proper weight in assessing plaintiff's claim of racial discrimination. Under these circumstances we reverse and remand for further proceedings consistent with this opinion.[11]

Judgment reversed and remanded for further proceedings.

MATTHES, Chief Judge.

I concur in the result.

---

11. In the event the court chooses to hear additional evidence to supplement the record it is at liberty to do so.

