Robert GILMORE, Appellant,

v.

KANSAS CITY TERMINAL RAILWAY COMPANY, Appellee.

No. 74–1207.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 12, 1974.

Decided Jan. 7, 1975.

Rehearing Denied Jan. 24, 1975.

---

Sheila Greenbaum Silverman, Kansas City, Mo., for appellant.

Jack W. R. Headley, Kansas City, Mo., for appellee.

Before VOGEL, Senior Circuit Judge, and ROSS and WEBSTER, Circuit Judges.

ROSS, Circuit Judge.

Robert Gilmore brought this action individually and as class representative under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–1 et seq., against the Kansas City Terminal Railway Co. [Terminal] for its allegedly discriminato-

ry employment practices. The focus of Gilmore's challenge is Terminal's promotion policy respecting thirty-five supervisory and management positions not governed by collective bargaining agreements.

At the evidentiary hearing only one witness, Gilmore, was called by the plaintiffs before they rested their case. Primarily they relied on an inference that the statistical data created either a violation of Title VII or a prima facie case of discrimination. Terminal then came forward with testimony that no qualified blacks had applied for the positions. Upon this basis the court found no discrimination had been proven and dismissed the complaint, entering judgment for the defendants and assessing costs against the plaintiffs. For the reasons hereinafter set forth we reverse and remand for further proceedings.

*I. Internal Organization.*

Terminal is structured into fourteen departments. Fourteen labor unions represent sixteen separate bargaining units for which contracts have been negotiated controlling working conditions, seniority, rates of pay, and promotions. All of the skilled, semiskilled, unskilled, service, office and clerical employees are represented by these several labor organizations. Not covered by union contract are various supervisory and management positions. At the time of entry of judgment in the district court, thirty-five such positions[1] held by forty-five persons were in existence in the various departments at Terminal. Promotion to those positions is the subject of this dispute.

From 1965 until the date of this action, blacks have constituted approximately 20% of the total number of paid hourly employees at Terminal; less than 1% of the total number of clerical employees; and, to the present, only one black person has held a supervisory or management position in the history of Terminal.

Terminal's promotion policy with respect to the challenged positions is that consideration, in most cases, is first given to those employed in the department in which the vacancy occurs. Terminal makes no effort to inform other company employees of the opening or vacancy. There are neither any established procedures nor any promotional sequence which Terminal employees must follow to obtain or qualify for a supervisory or management position and it administers no objective examinations to measure qualifications for the positions. The sole standard adhered to by Terminal in the selection of candidates for these positions is a subjective evaluation of: aptitude, ability, and work habits acquired or shown from prior work experience. In most cases an additional education requirement is imposed that the candidate be able to read and write. In some cases it is also necessary to pass a physical examination.

The justification advanced by Terminal's superintendent, Mr. Apple, for the lack of minority representation among these supervisory and management employees was:

> [O]ur blacks came early in early years and went to work for the Terminal as laborers, and very few of them went on to further any of their education or

1. The job classifications which are in issue here are: Maintenance Engineer; Station Maintenance Supervisor; Valuation Engineer; Building Engineer; Chief Engineer; Signal and Communications Supervisor; Assistant Engineer Signal and Communications; Signal and Communications Engineer; Signal Engineer; Project Engineer; Assistant Supervisor Bridge and Building; Roadmaster; Assistant General Foremen (6); General Foremen (3); Assistant to General Mail and Baggage Agent; Assistant Superintendent and Mail and Pas-senger Agent; Powerhouse Foremen; Roundhouse Foremen (3 between the two previous classifications); General Foreman, Master Mechanic; Car Department Supervisors; Station Master; Purchasing Agent; Real Estate Agent; Freight Agent; Assistant Auditor; Vice-President-Auditor-Secretary; Claim Agent; General Claim Agent and Chief Security Officer and Safety Director; Assistant Treasurer and Paymaster; Assistant Secretary; Manager of Personnel; Trainmasters (2); Superintendent; President and General Manager.

go to night schools or try to qualify themselves for better positions. Those, I think that did, have been given considerations.

\* \* \* \* \* \*

From my own personal observation of these people and from what dealings that I have had with them personally and the recommendations of department heads, these people have not possessed the necessary qualifications.

The reason given for intradepartmental preference was that employees in the department in which the vacancy occurred are most likely to possess the work experience and knowledge required.

## II. Individual Relief.

Gilmore asserted an individual claim for relief based upon Terminal's failure to promote him to a specific lower level supervisory position. However, his testimony at the evidentiary hearing disclosed that he did not possess the requisite skills which Terminal claimed were essential to that position.

■■ To establish a prima facie case of employment discrimination upon private claims for relief, an aggrieved party must show:

(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

**2.** See discussion, section III, infra.

**3.** In the order required by Fed.R.Civ.P. 23(c), the district court certified this proceeding as a class action and specifically found that Gilmore met the requisites of adequacy of representation set forth in Rule 23(a)(3) and (4). The court also held that:

Upon further evidentiary development, the Court may realign the parties, create sub-

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) (footnote omitted).

At issue in this case, however, unlike McDonnell Douglas Corp. v. Green, is the question of possibly racially discriminatory effects of the qualifications themselves. Id. at 802 n. 14, 93 S.Ct. 1817. Thus Gilmore's claim of racial discrimination should be reassessed after the class claims have been resolved. To the extent that his lack of "skills and experience" are attributable to present discrimination or the vestiges of past discrimination unsupportable by business necessity,[2] or to the extent that those qualifications do not bear a manifest relationship to job performance, Gilmore may be entitled to relief. Otherwise, the trial court may properly conclude that Gilmore was not the subject of racial discrimination in Terminal's failure to promote him to mechanical department foreman.

## III. Class Relief.[3]

■ At the outset we note that employment policies affecting supervisory and managerial positions are not insulated from the reaches of Title VII enforcement. Our own Court, as well as others, has found violations of Title VII in an employer's policy of promotion to supervisory positions not governed by union contract, but selected totally at the employer's discretion. United States v. N. L. Industries, 479 F.2d 354, 367–368 and n. 12 (8th Cir. 1973); Marquez v. Omaha District Sales Office, Ford Division, 440 F.2d 1157, 1159–1160 (8th Cir. 1971). See also Pettway v. American Cast Iron Pipe Co., 494 F.2d 211, 241–243 (5th Cir. 1974).

classes, further define the limits of the class; or if subsequent developments call for it, the Court in its discretion may . . . otherwise modify the proceedings.

We assume that upon remand the district court will exercise that discretion in effectuating whatever changes in the class or its representation it deems necessary to insure adequate presentation of the evidence for the equitable determination of the case.

■ Secondly, our Court has repeatedly held that statistical data may establish a prima facie case of employment discrimination. United States v. N. L. Industries, *supra,* 479 F.2d at 368; United States v. St. Louis-San Francisco Ry., 464 F.2d 301, 307 (8th Cir. 1972), cert. denied, 409 U.S. 1107, 93 S.Ct. 900, 34 L.Ed.2d 687 (1973); Carter v. Gallagher, 452 F.2d 315, 323 (8th Cir. 1971), modified on rehearing en banc, 452 F.2d 327 (8th Cir.), cert. denied, 406 U.S. 950, 92 S.Ct. 2045, 32 L.Ed.2d 338 (1972); Marquez v. Omaha District Sales Office, Ford Division, *supra,* 440 F.2d at 1160–1161; Parham v. Southwestern Bell Telephone Co., 433 F.2d 421, 426 (8th Cir. 1970); United States v. Sheet Metal Workers Local 36, 416 F.2d 123, 127 n. 7 (8th Cir. 1969). Moreover, we have found that in class action discrimination cases statistics create a prima facie case of discrimination specifically in the context of supervisory personnel. United States v. N. L. Industries, *supra,* 479 F.2d at 367–368 and n. 12; Marquez v. Omaha District Sales Office, Ford Division, *supra,* 440 F.2d at 1160–1161. Such a showing of disparity between an employer's work force and the population in the relevant market area has been held sufficient to shift the burden to the employer to rebut the inference that racial considerations have dictated employment choices. United States v. N. L. Industries, *supra,* 479 F.2d at 369; Marquez v. Omaha District Sales Office, Ford Division, *supra,* 440 F.2d at 1162; Carter v. Gallagher, *supra,* 452 F.2d at 323. Statistical evidence, however, is not sufficient as a matter of law to establish a violation of Title VII, as in Parham v. Southwestern Bell Telephone Co., *supra,* 433 F.2d at 426, when the defense of lack of qualified minority applicants is interposed by the employer. In that event, however, "Congress has placed on the employer the burden of showing that any given requirement must have a manifest relationship to the employment in question." Griggs v. Duke Power Co., 401 U.S. 424, 432, 91 S.Ct. 849, 854, 28 L.Ed.2d 158 (1971).

■ It is then open to the plaintiffs to demonstrate a violation of Title VII on either of two independent bases: that the employment policies reflect present discriminatory conduct or that current policies, though neutral on their face, carry forward vestiges of past discrimination. This represents the traditional dual focus in civil rights litigation upon purpose, as well as effect. Discrimination resulting from either commands relief. That assessment should be guided by the principles set forth in Rogers v. International Paper Co., No. 74–1086, 510 F.2d 1340 at 1344–1347 (8th Cir., 1975).

■ In this respect, work experience and intradepartmental preference are two aspects of Terminal's promotion policy. Without determining whether the work experience qualification meets the requirements of Griggs v. Duke Power Co., *supra,* we note that Terminal urges that an insufficient number of minority applicants have attained the requisite work experience in some departments and also that in other departments there is little or no minority representation. This suggests that the bargaining representative for those departments may have discriminated in the past and that vestiges of that discrimination endure within those departments. The fact of possible prior union discrimination is thus relevant to the determination of whether Terminal's promotion policy, which appears neutral on its face, actually carries forward the effects of prior discrimination. If it does, the intradepartmental preference must be modified by making the primary requirement one of experience in a functionally related job which provided the same degree of skill, familiarity and knowledge that work experience within the department would have provided.

■ Finally, we tender the observation that the record before us contains a strong suggestion of past discrimination on the part of both Terminal and the unions. Thus it is critical upon remand that the relevant unions be joined as

party defendants for it appears that they may be at least partially responsible for the absence of minority persons with the requisite training for at least the lower level supervisory positions. Indeed the present practices, especially the seniority provisions, of the respective unions may well perpetuate minority inability to obtain required skills, thereby themselves amounting to violations of Title VII.

Courts in the past have not been reluctant to order equitable relief when faced with trade union discrimination. For example, qualified black applicants have been given full status and immediate admission into membership;[4] subjective admission standards such as membership votes and grandfather clauses, and tests have been enjoined, and objective criteria and job related tests have been ordered for court approval;[5] seniority practices have been ordered revised;[6] and unions have been ordered to place partially skilled minority workers on the job in order to obtain further qualifying experience.[7]

Thus, while Title VII recognized two separate causes of action against unions and employers, 42 U.S.C. §§ 2000e–2(c) and 2000e–2(a)(1), it appears on the face of the record before us that the district court's most effective remedy will include the unions as well as Terminal. To effectuate the "breadth and flexibility . . . inherent" in the "district court's equitable powers to remedy past wrongs," Swann v. Charlotte-Mecklenburg Board of Education, 402 U.S. 1, 15, 91 S.Ct. 1267, 1276, 28 L.Ed.2d 554 (1971), then, this remand to the district court is with specific directions to the plaintiffs to join the relevant unions in this discrimination case.

For the reasons hereinbefore set forth, we reverse and remand for further proceedings consistent with the views expressed herein and with the direction that the unions be joined as party defendants.

---

4. Asbestos Workers Local 53 v. Vogler, 407 F.2d 1047, 1053 (5th Cir. 1969); United States v. Ironworkers Local 86, 315 F.Supp. 1202, 1239 (W.D.Wash.1970), aff'd, 443 F.2d 544 (9th Cir.), cert. denied, 404 U.S. 984, 92 S.Ct. 447, 30 L.Ed.2d 367 (1971); Dobbins v. Local 212, IBEW, 292 F.Supp. 413, 450 (S.D.Ohio 1968).

5. United States v. Sheet Metal Workers Local 36, 416 F.2d 123, 133 (8th Cir. 1969); Asbestos Workers Local 53 v. Vogler, supra, 407 F.2d at 1055; United States v. Ironworkers Local 86, supra, 315 F.Supp. at 1236, 1238; United States v. Local 73, Plumbers & Pipefitters, 314 F.Supp. 160, 165 (S.D.N.Y.1969); Dobbins v. Local 212, IBEW, supra, 292 F.Supp. at 453.

6. Rogers v. International Paper Co., No. 74–1086, 510 F.2d 1340 at 1354 (8th Cir. 1975) (and cases therein cited).

7. United States v. Sheet Metal Workers Local 36, supra, 416 F.2d at 133; United States v. Ironworkers Local 86, supra, 315 F.Supp. at 1247.