**James WILLIAMS, Plaintiff,**

**Equal Employment Opportunity Commission, Plaintiff-Intervenor,**

**v.**

**ST. LOUIS DIECASTING CORPORATION, Defendant.**

**No. 76-552C(3).**

United States District Court,
E. D. Missouri, E. D.

May 21, 1979.

Stanley Goldstein, St. Louis, Mo., Goldstein & Carey, Clayton, Mo., Charlie C. Taylor and John R. Sweeney, Equal Employment Opportunity Commission, Chicago, Ill., for plaintiff-intervenor.

Ward Fickie, Biggs, Curtis, Casserly & Barnes, St. Louis, Mo., for defendant.

## MEMORANDUM

NANGLE, District Judge.

Plaintiff James Williams instituted this action, alleging discrimination on account of race. By leave of Court, the Equal Employment Opportunity Commission intervened as party plaintiff, alleging a pattern and practice of discrimination at the Bridgeton, Missouri facility of defendant St. Louis Diecasting Corporation. Plaintiff Williams en-

tered into a settlement agreement with defendant; accordingly, trial proceeded only between the Commission and defendant. By order of this Court, trial herein was bifurcated, the Court hearing evidence only on the issue of liability.

This case was tried before the Court without a jury. The Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, the stipulations of the parties and being otherwise fully advised in the premises hereby makes the following findings of fact and conclusions of law as required by Rule 52, Federal Rules of Civil Procedure:

## FINDINGS OF FACT

1. Plaintiff-intervenor, Equal Employment Opportunity Commission [hereinafter "EEOC"] is an agency of the United States Government. The EEOC intervened herein as a result of the charge filed with the EEOC by plaintiff Williams. A second charge was filed by an employee, William Hubbard, and signed by nineteen additional employees. The evidence failed to establish that the EEOC made any effort to conciliate with respect to the Hubbard charge. Intervention herein, however, is appropriate on the basis of the Williams charge. Defendant St. Louis Diecasting Corporation is a corporation organized and existing pursuant to the laws of the state of Missouri. At all times relevant herein, defendant has been doing business within this District, and is an employer within the meaning of 42 U.S.C. § 2000e(b). Defendant is engaged in the manufacture of zinc and aluminum diecastings.

2. Prior to 1968, defendant was located within the city of St. Louis, Missouri. In 1968, it moved to a facility in Bridgeton, Missouri which is located in St. Louis County. The present location, although not well-serviced by public transportation is located approximately two miles away from a major highway.

3. During the years 1969 through 1976, defendant employed between 38 and 59 persons in professional, supervisory and clerical capacities. In 1977, Billie Whitfield was hired as a buyer; she was the first black salaried employee to be hired by defendant. During the years 1965 through 1978, defendant's hourly or plant work force varied in number from 128 to 265. The percentage of that work force which consisted of black employees varied from 9.7% to 27.4%.

4. At all times relevant herein, the percentage of black individuals residing in the St. Louis Standard Metropolitan Statistical Area was 16%. The percentage of black individuals in the blue collar work force in the St. Louis SMSA was 20.7%. Testimony was adduced at trial to the effect that blacks are more dependent upon public transportation and tend to be employed close to their place of residence. Thus, defendant contends that the statistical population, against which its employees are to be compared, should include only those areas surrounding its facilities from which blacks would commute. The Court has serious doubts as to the veracity of the assumptions, concerning dependence upon public transportation and choice of job location, as applied to the St. Louis area and the situation herein. Moreover, the evidence adduced at trial refuted these assumptions. Defendant has had little difficulty in employing black hourly employees. Any claim of transportation difficulties would have no bearing on the allegations concerning defendant's failure to employ blacks in higher-paying entry level positions, to promote black employees, or failure to hire black salaried employees.

5. There are no educational or job prerequisites for employment in the entry level positions in the hourly production work force at defendant corporation; all positions are entry level positions.

6. The evidence established that black employees are consistently placed in the lower-paying positions at defendant's facilities. Several classifications, including porters, degreasers, laborers, alloy pot men and material handlers, were filled almost exclusively by black employees. The higher-paying classifications, including tool room, maintenance, diecast and production set-up, and shipping, were filled almost exclusively by white employees.

7. The evidence also established that defendant failed to promote blacks to higher-paying positions or permit blacks to transfer into higher-paying classifications. Mention was made at trial of examinations which had been used in connection with promotions. These examinations were not produced at trial nor was there any evidence of their validation. The criteria for promotion or transfer were subjective and ill-defined. Even the procedure for promotion and transfer was ambiguous. Openings were not posted. Instead, an employee had to indicate on a slip that he was interested in a particular position, without knowing whether or not an opening existed. Yet, the evidence adduced at trial established that several white employees were promoted without ever having indicated their interest in promotion.

8. Defendant also limited the training opportunities of its black employees. When a diecasting or production machine would shut down, white employees were given the opportunity to work at temporary set-up positions. With few exceptions, black employees were assigned to floor sweeping and clean-up duties.

9. Although no longer enforced, defendant did have a policy of discharging employees whose wages were garnished.

10. Defendant submitted evidence concerning applications for hourly and salaried positions at its facilities. The evidence, however, was of minimal value to this Court because of the large percentage of applications in which race was unknown. The study consisted of an analysis of applications from January, 1975 through December, 1977. In the years 1975 and 1977, the race of 37% of the applicants was unknown. In 1976, the percentage of unknowns was 53%. Accordingly, the Court concludes that this study is of little aid in determining the issues herein.

11. The Court finds from the evidence adduced at trial that defendant has maintained a policy and practice of discrimination on account of race in connection with hiring, assignment, promotion, and discharge.

## CONCLUSIONS OF LAW

■ This Court has jurisdiction of the subject matter and the parties to this suit in accordance with 42 U.S.C. § 2000e–5(f)(1). Defendant's contentions to the contrary are without merit.

In order to prevail herein, the EEOC must

. . . demonstrate that unlawful discrimination has been a regular procedure or policy followed by an employer or group of employers. [citation omitted]. At the initial, "liability" stage of a pattern-or-practice suit the Government is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy. Its burden is to establish a prima facie case that such policy existed. *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 360, 97 S.Ct. 1843, 1867, 52 L.Ed.2d 396 (1977).

It is the Court's conclusion that plaintiff has met its burden. Plaintiff adduced statistical evidence which established not only that defendant did not employ any black salaried employees until 1977 but that defendant's black hourly employees were consistently assigned to the lower-paying positions. In addition, defendant maintained a policy of discharging individuals for wage garnishment. Such policy has been held to have a disparate impact upon blacks. *Wallace v. Debron Corp.,* 494 F.2d 674 (8th Cir. 1974). This evidence, combined with testimony of several of defendant's black employees, reciting specific instances of racial discrimination, overwhelmingly establishes a prima facie case. Added to such evidence is the nature and impact of the subjective, undefined promotional and transfer policy which fostered the exclusion of black employees from higher-paying classifications and positions. *Parson v. Kaiser Aluminum & Chemical Corp.,* 17 FEP Cases 1272 (5th Cir. 1978); *Gilmore v. Kansas City Terminal Railway Corporation,* 509 F.2d 48 (8th Cir. 1975); *Muller v. United States Steel Corporation,* 509 F.2d 923 (10th Cir. 1975); *Rowe*

**1208**

*v. General Motors Corporation,* 457 F.2d 348 (5th Cir. 1972).

■ Defendant attempted to assert that its black employees were not sufficiently qualified to be employed in either the higher-paying classifications, or as foremen or supervisory personnel. As noted earlier, there were no job or educational prerequisites for employment in the entry level positions in the hourly work force. There were no clearly defined criteria for promotion or transfer. Compare *Keely v. Westinghouse Electric Corp.,* 404 F.Supp. 573 (E.D.Mo. 1975). All of defendant's supervisory personnel were white. Under such circumstances, the Court concludes that the defense of lack of qualified black employees is without merit and unsupported by the evidence herein. *Cf., Gilmore v. Kansas City Terminal Railway Company,* 509 F.2d 48 (8th Cir. 1975).

Accordingly, based on the findings of this Court, the Court concludes that defendant has engaged in a pattern or practice of discrimination on account of race with respect to hiring, assignment, promotion and discharge. Defendant has agreed to comply with certain non-monetary provisions contained in a proposed settlement agreement. Accordingly, the Court will incorporate said provisions into its order herein. Defendant has asked this Court to determine certain issues relating exclusively to damages. Since trial herein has been bifurcated, the Court declines to rule upon said issues at this time. The Court notes, however, its opinion that *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977) does not apply under the circumstances herein. The Commission intervened on the basis of the charge filed by James Williams. A charge, however, was also filed by twenty other black employees. Under such circumstances, the Court fails to perceive the relevance of the *Evans* decision. *Cf., Equal Employment Opportunity Commission v. Contour Chair Lounge Co., Inc.,* 596 F.2d 809 (8th Cir. 1979).