Johnie YOUNG, Appellant,

v.

**EDGCOMB STEEL COMPANY, a corporation, Appellee.**

No. 73-2347.

United States Court of Appeals, Fourth Circuit.

Argued April 1, 1974.

Decided July 11, 1974.

Robert Belton, Charlotte, N. C. (Adam Stein, Charlotte, N. C., Jack Greenberg; Morris J. Baller, New York City, and Chambers, Stein, Ferguson & Lanning, Charlotte, N. C., on brief) for appellant.

Whiteford S. Blakeney, Charlotte, N. C. (Blakeney, Alexander & Machen, Charlotte, N. C., on brief) for appellee.

Before BUTZNER, RUSSELL and FIELD, Circuit Judges.

BUTZNER, Circuit Judge:

This appeal raises a narrow issue about the role a district court should play in determining an employee's qualifications for promotion after it has ruled that the employer violated Title VII of the Civil Rights Act of 1964. The district court held that the employee was unfitted for the position he sought. We reverse the provision of the court's judgment denying the employee promotion and remand the case with instructions for the entry of a decree that will place

on the employer the responsibility of determining the employee's qualifications without the taint of its previous discriminatory practices.

Johnie Young has worked in a warehouse of the Edgcomb Steel Company in Greensboro, North Carolina, for more than 15 years. Because he failed the Wonderlic Personnel Test, he was denied promotion to the inside sales department. Asserting that he had been disqualified because of his race, he instituted these proceedings on behalf of himself and similarly situated black persons.

The district court held that the company had violated Title VII by discriminating against its black employees through the use of a test that was not job related and through reliance on subjective factors for promotion. This ruling is securely founded on law and fact, and the company has not appealed. Similarly, the court's relief for the class Young represents is not an issue on appeal. The district court also held, however, that Young was not qualified for promotion. It based this ruling on errors of spelling, grammar, and punctuation in his complaint to the Equal Employment Opportunity Commission and on his mispronunciation of the names of some of his co-workers when he testified. Young has appealed from this ruling of the court.

██ ██ Title VII of the Civil Rights Act of 1964 unequivocally condemns the denial of promotion because of race,[1] but it does not demand that an employee be placed in a position for which he is not qualified.[2] Therefore, the Act grants district courts broad discretion to design appropriate equitable remedies for unlawful employment practices.[3] Patterns for the sound exercise of this discretion are emerging from the varied factual situations found in Title VII litigation. These situations can be roughly grouped into three classifications, each requiring a different remedy. Occasionally the classifications overlap, and a single case may involve all three.[4]

The first class concerns employees who have demonstrated in their present jobs substantially the same skills as those required for the positions to which they aspire. This situation most frequently arises when an employer has operated racially segregated departments. Courts have remedied this unlawful practice by integrating the departments or requiring the allowance of interdepartmental transfers, so that in either event a minority employee can take his "rightful place" and advance in accordance with his ability as vacancies occur.[5] Young does not fall within this class. His job in the warehouse does not require skills substantially similar to those of an inside salesman.

Illustrative of the second class are positions requiring particular skills that are generally attained through training and experience gained at subordinate levels within the same area of specialization. Promotion to these positions occurs almost exclusively from within, along pre-

1. Title 42 U.S.C. § 2000e–2(a) (1972).

2. Griggs 'v. Duke Power Co., 401 U.S. 424, 430, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

3. Title 42 U.S.C. § 2000e–5(g) (1972).

4. See, e. g., United States v. N. L. Industries, Inc., 479 F.2d 354 (8th Cir. 1973).

5. See, e. g., United States v. Chesapeake and Ohio Ry. Co., 471 F.2d 582 (4th Cir. 1972), cert. denied, 411 U.S. 939, 93 S.Ct. 1893, 36 L.Ed.2d 401 (1973); Local 189, United Papermakers & Paperworkers v. United States, 416 F.2d 980 (5th Cir. 1969), cert. denied, 397 U.S. 919, 90 S.Ct. 926, 25 L.Ed. 2d 100 (1970); United States v. Bethlehem Steel Corp., 446 F.2d 652 (2d Cir. 1971).

The "rightful place" theory for relief was explained in Note, Title VII, Seniority Discrimination and the Incumbent Negro, 80 Harv.L.Rev. 1260, 1268 (1967), as follows:
    "[T]he 'rightful place' approach would allow an incumbent Negro to bid for openings in 'white' jobs comparable to those held by whites of equal tenure, on the basis of his full length of service with the employer. If he met the existing ability requirements for such a job, he would be entitled to fill it, without regard to the seniority expectations of junior white employees."
This theory has been utilized frequently to shape appropriate remedies. See United States v. Georgia Power Co., 474 F.2d 906, 927 (5th Cir. 1973).

determined lines of progression. Unlawful employment practices which deny employees the opportunity for this type of training inevitably preclude or delay their consideration for further advancement. Despite proof of this type of discrimination, black employees who have been deprived of experience in subordinate jobs generally are not immediately eligible for higher positions in the line of progression.[6] But if an employee is qualified by training received outside the line of progression, he is entitled to his "rightful place," and he cannot be relegated to a position below that to which his seniority and ability would have entitled him were it not for the company's discrimination.[7] Young does not fall within this class because inside salesmen occupy entry level positions which the company fills by hiring new employees as well as by promotion.

█ The first and second classifications have two common characteristics—the employer's standards for promotion are valid, but the way the employer has applied the standards to minority employees is unlawful. Thus, the employer's standards can be utilized by a court in a nondiscriminatory manner to determine whether an employee should be advanced. It is that factor which distinguishes the first two classes from the third. In class three are those cases where the proof establishes that the employer's standards for promotion produce a racially discriminatory effect, and, therefore, new measurements of ability are needed. However, the formulation of the new standards is not a suitable function of the district court.[8] This responsibility can be better discharged by the company's management which is usually more familiar with the skills that its employees should have. The discreet remedy, we believe, is for the district court to direct the employer to reevaluate its employees using nondiscriminatory, objective, job related standards.[9] This is the type of remedy we have previously suggested under circumstances essentially similar to Young's.[10] By affording the employer the opportunity to specify its qualifications for promotion, the court does not abdicate its responsibility. If the need arises, the court can appraise the new standards and determine whether they are being applied without discrimination in subsequent proceedings for the enforcement of its decree.

█ It is apparent that Young falls within the third class. His employer discriminatorily refused him promotion because he failed a test which the district court properly found was not related to the position he sought. However, by substituting its own criteria for promotion, the district court, as we have previ-

---

6. *See e. g.*, Marquez v. Omaha District Sales Office, Ford Division, 440 F.2d 1157 (8th Cir. 1971). Although the *Marquez* court found that the employee was not qualified for the position he sought, it ordered his advancement to a lower job in the hierarchy for which he was plainly fitted.

7. Pettway v. American Cast Iron Pipe Co., 494 F.2d 211, 249 (5th Cir. 1974).

8. Judge Brown's observations in Jenkins v. United Gas Corp., 400 F.2d 28, 35 (5th Cir. 1968), albeit a factually dissimilar case, are pertinent:

   "The Federal Judge—awesome as are his responsibilities and powers when invoked by a timely, proper [Title VII] suit—does not sit as a sort of high level industrial arbiter to determine whether employee X rather than Y should have a promotion."

9. *See* United States v. Jacksonville Terminal Co., 451 F.2d 418, 458 (5th Cir. 1971); Equal Employment Opportunity Commission Guidelines on Employee Selection Procedures, 29 C.F.R. § 1607 (1973); Blumrosen, Strangers in Paradise: Griggs v. Duke Power Co. and the Concept of Employment Discrimination, 71 Mich.L.Rev. 59 (1972).

10. In Griggs v. Duke Power Co., 420 F.2d 1225, 1236 (4th Cir. 1970), rev'd in part on other grounds, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), we said:

    "The educational and test requirements are invalid as applied to ['certain employees'] eligibility for transfer and promotion. Thus, on remand, the district court should award proper injunctive relief to insure that these six employees are considered for any future openings without being subject to the educational or testing requirements."

ously noted, undertook a function which properly belonged to management.

The company's vice president, who was also the general manager of the plant where Young worked, testified that in selecting inside salesmen the company sought people who displayed diplomacy, intelligence, patience, initiative, attention to detail, and ability to work under stress. Additionally, the witness emphasized that an inside salesman must have concern for the welfare of the customer, while remaining loyal to the company. The company, however, has no written job description for the position and it has not established any formal educational requirements. The ability to write and speak effectively may indeed be essential, but the record does not disclose what level of competence the company normally required in this respect. Nor does the evidence establish whether presently employed salesmen write and speak more fluently than Young. Moreover, several years ago, the company rated Young's job performance on a par with a white co-worker who was subsequently promoted to inside salesman. Of course, satisfactory performance of one task does not always foretell ability to perform another task, but Young's excellent rating provides further indication that he should now be reevaluated by the company in a lawful manner.

That part of the court's decree which denies Young relief is reversed; in all other respects the judgment is affirmed. The case is remanded to the district court with directions for the entry of a decree requiring the employer to reevaluate Young's qualifications for filling the next vacancy in the inside sales force using nondiscriminatory, objective, job related standards. If a probationary period has been used to test other inside salesmen, Young should have the same opportunity to demonstrate his qualifica-

tions since he has already shown ability in his present job comparable to that of a white employee who was previously promoted. The district court should determine what provisions are appropriate for seniority and job retention in the event Young is transferred from the warehouse to inside sales.[11] In due course, the district court should also rule on Young's claim for back pay.[12] Young shall recover his costs.

11. *See* United States v. Bethlehem Steel Corp., 446 F.2d 652, 659 (2d Cir. 1971); Griggs v. Duke Power Co., 420 F.2d 1225, 1236 (4th Cir. 1970), rev'd in part on other grounds, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed. 2d 158 (1971).

12. Title 42 U.S.C. § 2000e–5(g); Robinson v. Lorillard, 444 F.2d 794, 801 (4th Cir. 1971).