· **Julius B. LOCKE, Appellee,**

v.

**KANSAS CITY POWER AND LIGHT COMPANY, Appellant.**

**No. 80–1402.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 16, 1981.

Decided Sept. 28, 1981.

---

Samuel I. McHenry, Kansas City, Mo., for appellee.

Michael F. Delaney, Terry L. Karnaze, Kansas City, Mo., for appellant Kansas City Power & Light Co.

Before BRIGHT, STEPHENSON and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Kansas City Power & Light Co. (KCP&L) appeals from a judgment entered in the District Court [1] for the Western District of Missouri finding that KCP&L unlawfully discriminated against appellee Julius B. Locke on the basis of his race. The district court found that KCP&L had denied appellee employment in violation of Title VII of

[1]. The Honorable John W. Oliver, Chief Judge, United States District Court for the Western District of Missouri.

the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and awarded appellee backpay, reinstatement and attorney's fees.

For reversal appellant argues that the district court erred in (1) requiring appellant to show by a "preponderance of evidence" a legitimate, nondiscriminatory reason for refusing Locke's bid for employment; (2) finding the reason given by KCP&L for refusing Locke's bid to be a pretext; (3) ordering appellee reinstated to a higher position than that for which he had applied, with backpay computed, in part, at a rate commensurate with that higher position; and (4) eliminating the probationary period applied to all other employees.

For the reasons discussed below, we affirm in part and reverse in part and remand the case to the district court for further consideration of the remedy issue.

## I. *Background*

On November 3, 1976, KCP&L hired Locke, a black male, as a "Temporary Plant Helper" at KCP&L's Hawthorn generating facility to work for a period of sixty days. Locke worked the full sixty-day term which ended on December 30, 1976. Shortly thereafter, on January 26, 1977, KCP&L rehired Locke, again as a "Temporary Plant Helper," this time for a period of ninety days. Locke completed this term of employment on April 27, 1977.

Temporary employees are hired by KCP&L for a specified period of time at the end of which the company automatically lays off the temporary employee unless he or she is transferred to a permanent position. (By contrast, in a permanent position at KCP&L after a probationary period the employee attains full permanent status, under which the employee automatically stays on unless appropriate steps are taken to end employment.)[2] While employed as a temporary plant helper at KCP&L, Locke applied to fill openings in three permanent job positions—one in November, 1976, for a janitor, and two in March, 1977, for plant helpers. Each time KCP&L returned the application to Locke, indicating that it would not be considered because a company policy prohibited accepting applications from temporary employees until the end of their temporary stints. Concerning the November, 1976, application, the company explained it had been filed after the closing date on the job announcement for accepting applications and that Locke was not eligible to apply until his temporary job ended. Concerning the March, 1977, applications, KCP&L explained only that Locke was not eligible to apply until his temporary job ended.[3] The company personnel department returned each application to Locke with an explanatory note dated the same day the application was submitted.

KCP&L continued to seek applicants for the available positions and ultimately filled them. Acting contrary to company policy as it was represented to Locke, KCP&L hired three white male temporary employees for the permanent positions which Locke also had sought. The applications of

**2.** As KCP&L describes its policy, its plant supervisors may hire temporary employees only in an emergency or nonrecurring situation and must obtain authorization from the company which permits hiring of only a limited number of temporaries. The district court was not convinced, however, that this policy was actually followed, because the record suggested that at least in some instances KCP&L hired temporary plant helpers to do essentially the same job as permanent plant helpers on a regular basis. In addition to the groups of temporary plant helpers (including Locke) hired in late 1976 and 1977, a third group was hired later in 1977 in what appeared to be an ongoing process despite absence of any evidence in the record of a year-long emergency under the company's stated policy.

**3.** There is some indication that Locke made these latter two applications after the closing date listed on the job announcement. The district court, however, found specifically that KCP&L continued to accept applications after Locke was turned down, *Locke v. Kansas City Power & Light Co.*, No. 78–0636–CV–W–1 (W.D.Mo. Apr. 19, 1980), slip op. at 3, and KCP&L does not challenge that finding on appeal. Indeed, KCP&L does not assign any error to the district court's finding that Locke established a *prima facie* case of racial discrimination under the analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (*McDonnell Douglas*).

these temporary employees were considered even before their projects had been substantially completed.

Locke's second period of temporary employment ended April 27, 1977, and he was not rehired by the company. On May 9, 1977, Locke filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging generally that the company had discriminated against him on the basis of race and specifically that a "probationary period" was used as a pretext to discharge him. The EEOC processed this charge and found no reasonable cause to believe that Locke's allegations were true and on June 7, 1978, notified Locke of his right to sue. Locke commenced this proceeding on August 29, 1978, complaining that KCP&L had discriminatorily failed to hire him into a permanent position and discharged him from temporary employment on the basis of race, all in violation of Title VII of the Civil Rights Act of 1964 and of 42 U.S.C. § 1981.[4]

At trial it was stipulated that KCP&L had hired into the permanent plant helper positions in question three white males who had, like Locke, been temporary employees at the time of their applications and, like Locke, had not yet completed their temporary stints. KCP&L did not, however, at-tempt to justify its failure to hire Locke on the basis of the supposed policy against accepting applications from temporary workers before their jobs ended.[5] Instead, the company offered a new justification that it had actually given consideration to appellant's application and decided to reject him because of poor work performance. In particular KCP&L relied upon testimony by Glendon Paul Curry, the maintenance supervisor at the plant where Locke worked, that Curry had decided not to accept Locke's bid on the permanent plant helper jobs because of Locke's poor performance as a temporary employee. Curry testified that he had reports from foremen that Locke had been away from his work station, had argued with them, and had refused work assignments from more senior employees authorized by the foremen to direct him. The company also presented testimony of foremen and workers as direct evidence of Locke's poor performance.

The district court, however, determined this explanation was a pretext for a number of reasons which the court specified in an oral decision delivered from the bench.[6] The company had obtained written reports from foremen on Locke's supposedly poor performance after Locke's employment ended; the timing, of course, casts some doubt on whether those reports were actu-

4. KCP&L does not assert that the allegations in the complaint were not "like or related" to the substance of the EEOC charge. *See Satz v. ITT Financial Corp.,* 619 F.2d 738, 741 (8th Cir. 1980). The EEOC determination of the charge is not in the record before us.

5. It was stipulated that
During the periods of [Locke's] employment, [KCP&L] maintained the following bidding procedure on permanent positions:
(a) Initially, regular bids will be considered.
(b) After regular employee bids are accepted or rejected, consideration may then be given to probationary employee bidders.
(c) Probationary employees are hired without time limitation and after six months of satisfactory service become employees.
(d) For the purposes of bidding, temporary employees are also probationary except that they are hired for a specific period of time only.
(e) The Company may elect to defer consideration of any bid submitted by a tempo-rary employee until the project upon [which] they are working has been completed or nearly completed.
(f) The plant superintendent or his representative makes the decision regarding acceptance or rejection of bids.

6. Although the district court issued a document identified as written findings of fact and conclusions of law which had been approved as to form by counsel for both sides, the document does not fully reflect the substance of the factual findings and legal reasoning relied on by the court in announcing from the bench its decision on liability. In evaluating the district court's decision we consider both the document and the transcript of Judge Oliver's remarks which do not contradict the document but supplement it. *Cf. Griffin v. United States,* 513 F.2d 1321 (9th Cir. 1975) (findings supplemented by judge's remarks during trial). *See generally* 9 C. Wright & A. Miller, Federal Practice & Procedure § 2577 (1971).

ally considered in deciding not to give a permanent position to Locke. Moreover, KCP&L witnesses could not name any other employee who had been the subject of such post-termination reports. Locke's supposedly poor performance had not been grounds for failing to rehire him for a second period of temporary employment or for dismissing him. In the district court's view Locke's supposed absence from his work station and failure to follow orders from senior nonsupervisory workers would not be unusual in a job like plant helper where new workers were shuffled between various tasks, some requiring movement around various areas of the plant. It was not clear from the record which KCP&L official was responsible for the decisions about Locke's future employment or what standards or considerations were normally applied in making the decision.[7] Finally, KCP&L's proffered justification for the failure to hire Locke was entirely different from what Locke was told when his application was returned to him.

The district court concluded that Locke had established a *prima facie* case of racial discrimination under the test of *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (*McDonnell Douglas*), and that the reasons proffered by KCP&L for denying him a permanent position were pretextual. In its memorandum the court specified also that the "claim that [Locke] was less than a perfect employee fails to rebut [Locke's] prima facie case as it isn't necessary for [Locke] to 'show perfect performance or even average performance,'" *Locke v. Kansas City Power & Light Co.*, No. 78–0636–CV–W–1 (W.D.Mo. Apr. 19, 1980), slip op. at 3, *citing Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277 (7th Cir. 1977), and that KCP&L's "claim that

[Locke] was not entitled to further employment because of an alleged failure to get along with his co-workers fails to rebut [Locke's] prima facie case as [Locke] is not required to have a 'pleasing personality' in order to be entitled to further employment." *Locke v. Kansas City Power & Light Co.*, *supra*, slip op. at 3, *citing Kyriazi v. Western Electric Co.*, 461 F.Supp. 894 (D.N.J.1978). The district court also concluded that KCP&L had "failed to show by a 'preponderance of the evidence' that [the] failure to accept plaintiff's bid for regular employment was for a legitimate nondiscriminatory reason." *Locke v. Kansas City Power & Light Co.*, *supra*, slip op. at 4, *citing Vanguard Justice Society v. Hughes*, 471 F.Supp. 670 (D.Md.1979).

Accordingly, the district court found that KCP&L had violated Title VII by denying Locke a permanent plant helper position as of April, 1977, because of his race. In fashioning a remedy the court sought to put Locke in the position he would have occupied but for the discrimination against him. As the white temporary employees hired in place of Locke had all been promoted from plant helper to relief man positions at KCP&L, the district court ruled that Locke also was entitled to a relief man position. The court also held that Locke would not be required to undergo the normal six-month probationary period for new permanent employees. Finally, the court awarded backpay from April 27, 1977, the date KCP&L filled the permanent plant helper position sought by Locke. Backpay was computed at the rate for a plant helper until January 18, 1978 (the date found by the court to be the "average date" for promotion to relief man of the three white plant helpers hired in April, 1977, ahead of Locke), and after

---

7. For example, although KCP&L stipulated the decision would be made by the plant supervisor or his representative, KCP&L at trial took the position that the decision was delegated by the plant supervisor to the supervisor of maintenance in the plant. The district court remarked on the absence of any evidence that the plant manager made even a cursory review of a decision that was apparently his responsibility or

that there were any standards at all to guide the decision. Although the court considered this as background evidence, it clearly did not hold the subjectiveness or vagueness of the decision making process *per se* improper, but rather went on to consider the ultimate question of whether race was a factor in this particular case.

January 18, 1978, at the rate for a relief man.[8]

## II. The Finding of Discrimination

The district court found that KCP&L's failure to hire Locke was racially discriminatory under a theory of disparate treatment, that is, that KCP&L "simply treat[ed Locke] less favorably than others because of [his] race . . . ." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15, 97 S.Ct. 1843, 1854–55 n.15, 52 L.Ed.2d 396 (1977) (*Teamsters*). It reached this conclusion by applying the method of analysis set forth in *McDonnell Douglas*, under which a Title VII plaintiff may establish a *prima facie* case of discriminatory disparate treatment by showing that he or she (1) belongs to a racial minority, (2) applied and was qualified to fill a job opening, (3) that he or she was rejected, and (4) that the employer continued to seek applicants. 411 U.S. at 802, 93 S.Ct. at 1824. The employer may rebut the presumption by articulating a legitimate, nondiscriminatory reason for its actions. *Id.* Finally, it is open to the employee to persuade the court that the proffered reason for the discrimination was in fact a mere pretext for discriminatory treatment. *Id.* at 804, 93 S.Ct. at 1825.

KCP&L does not argue that the district court erred in finding that Locke had established a *prima facie* case of disparate treatment.[9] The company does argue that the district court erred (1) in imposing on it the burden of proving by a preponderance of evidence its legitimate, nondiscriminatory reason for failing to hire Locke into a permanent position and (2) in finding without adequate evidentiary support that the proffered reason for the failure to hire was a pretext. We agree that the district court

placed too heavy a burden of proof on KCP&L,[10] but find the error to be harmless because the substantial evidence in the record supports the district court's finding that the reasons offered by KCP&L were pretextual.

The district court had ample reason for concluding that KCP&L's explanation for denying a permanent position to Locke was a pretext. Of course, such considerations as the past attitude of an employee toward the company, supervisors and coworkers can legitimately be used in making hiring decisions. *See Correa v. Nampa School District No. 131*, 645 F.2d 814 (9th Cir. 1981); *Shack v. Southworth*, 521 F.2d 51 (6th Cir. 1975). But in this case the district court had a number of reasons to believe Locke's past performance and attitude were a pretext. Unfavorable reports on Locke were gathered after he was terminated, in what the record indicated was a departure from past practice. It could be inferred that the decision was not actually based on information put into reports made up later. The court viewed the allegations of bad attitude and misconduct on the job as too insubstantial to have been the actual basis for the decision not to hire Locke into a permanent position. Because much of the alleged misconduct had not caused even minor disciplinary action against Locke when he was a temporary employee, the district court seems to have concluded that the allegations, even if on the surface grounds for refusing to hire Locke, in substance did not actually form the basis for the decision. The district court was obviously also influenced by the lack of set standards and procedures governing the challenged decision. For example, the company indicated during discovery that one official was responsible for the decision but indicated at

---

8. The award was increased by adding prejudgment interest and decreased by subtracting interim earnings of Locke.

9. *See* note 5 *supra*.

10. The district court's approach was consistent with that of this court in *Vaughn v. Westinghouse Electric Co.*, 620 F.2d 655 (8th Cir. 1980) (burden on employer to prove by preponder-

ance of evidence that it had a legitimate, nondiscriminatory reason for the challenged decision; vacated by the Supreme Court after *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (*Burdine*)), vacated and remanded, *Westinghouse Electric Corp. v. Vaughn*, 450 U.S. 972, 101 S.Ct. 1504, 67 L.Ed.2d 808 (1981).

trial that the decision was fully delegated to a subordinate. Finally, KCP&L gave different reasons for the decision at different times. It first informed Locke he could not apply until his temporary employment ended, although it took applications from coworkers during their temporary stint and hired them. Then, when Locke charged discrimination, KCP&L took a new position that Locke's performance and attitude were poor, based in part on reports from supervisors gathered after the decision to deny him permanent employment had been made.

■ The ultimate finding that KCP&L's reasons were pretextual and the discharge was based on Locke's race is supported on this record. We do, however, express some reservations about the district court's conclusions that an employee need not "show perfect performance or even average performance" to prevail in this kind of case. We do not think that the district court would wish to be understood to mean that it is not legitimate for an employer to disfavor an employee or jobseeker on the basis of imperfect or below average performance. Title VII guarantees equal employment opportunities, but does not protect those who abuse opportunities that are in fact open to them on a fully nondiscriminatory basis. As we read the district court's decision, the problem with KCP&L's explanation was not that it failed to give a reason that would generally be legitimate for refusing to hire a jobseeker. The problem is that on the record as a whole the district court found it highly questionable whether Locke's performance or attitude actually was the basis for turning his application down and, if it was the basis, the district court found it likely that the consideration of Locke's performance or attitude was influenced by his race.

■ KCP&L also argues that its hiring statistics demonstrate a clearly nondiscriminatory pattern; such statistics are of course relevant. *Furnco Construction Co. v. Waters*, 438 U.S. 567, 579–80, 98 S.Ct. 2943, 2950–51, 57 L.Ed.2d 957 (1978); *Donaldson v. Pillsbury Co.*, 554 F.2d 825, 833 (8th Cir.), cert. denied, 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977); *Stevens v. Junior College District*, 548 F.2d 779 (8th Cir. 1977). *But see McDonnell Douglas, supra*, 411 U.S. at 805 n.19, 93 S.Ct. at 1826 n.19 (suggesting statistics may not be as important as more particularized evidence in a case of individual disparate treatment). Here, the district court considered KCP&L's statistical evidence and rightly gave it little weight. The company argues basically that during 1977 it gave permanent positions to black temporary employees in roughly the same proportion as white temporary employees. During the period Locke was under consideration, however, it was stipulated that only one of sixty-one permanent employees hired by KCP&L was black. In this context, the statistical pattern subsequent to the rejection of Locke would as likely be evidence of remedial or affirmative action efforts as evidence of the company's policy while Locke was under consideration. *See Marquez v. Omaha District Sales Office*, 440 F.2d 1157, 1161 (8th Cir. 1971). The district court considered the statistical evidence and did not err in finding it inadequate to refute the evidence of discrimination. We therefore affirm the district court's holding on liability.

III. *Remedy*

A. *Instatement as Permanent Plant Helper and Backpay at Plant Helper Rates*

As explained above, the district court found that absent discrimination Locke would have been hired as a plant helper on April 27, 1977 and continued in that position until January 20, 1978. The court awarded backpay at the plant helper rate until January 20, 1978; afterward it awarded backpay at the higher relief man rate. Including interest, a deduction for Locke's interim earnings, and probable overtime, the backpay award was $6,131.63 for 1977. During 1978 the award was zero because Locke's interim earnings fully offset his lost backpay even at the higher relief man rate. For 1979, the award was $7,359.14 and for 1980 up to the date of the district court's judgment the award was $2,060.80, all calculat-

ed at the relief man rate. In addition, the court ordered Locke instated as a relief man on a theory that Locke would have been promoted by that time in the absence of discrimination. The court further ordered that Locke should not have to undergo a six-month probationary period provided in KCP&L's contract with the union representing plant employees, because Locke would have served his probationary period long ago in the absence of discrimination.

On appeal KCP&L challenges certain aspects of this remedy, including the backpay award at the relief man rate, the instatement of Locke as a relief man, and the cancellation of the probationary period. KCP&L does not argue that backpay at the plant helper rate or instatement as a plant helper was improper as a remedy for the discrimination found by the district court and KCP&L did not appeal these matters. KCP&L's brief nevertheless seeks reversal of the entire judgment on grounds that, even if the district court was correct in finding discrimination, the remedy was an abuse of discretion. We take this to apply only to those parts of the remedy KCP&L objects to, and note that neither instatement of Locke as a plant helper nor backpay at the plant helper rate have been appealed. In view of our affirmance of the district court's finding of discrimination, no challenge remains to the portions of the judgment ordering Locke instated as a plant helper and $6,131.63 in backpay at the plant helper rate for 1977, and those parts of the judgment stand. However, as discussed below, the record before us is not adequate to support the other portions of the judgment. Therefore, we vacate and remand these questions for further consideration in light of this opinion.

### B. *Standard of Review*

 Preliminarily we note that we review the district court's remedial order only to correct abuse of discretion. *Harper v. General Grocers Co.*, 590 F.2d 713, 717 (8th Cir. 1979). That discretion is not unbounded but must be exercised consistently with the strong remedial aims of Title VII.

One of the central purposes of Title VII is "to make persons whole for injuries suffered on account of unlawful employment discrimination." *Albemarle Paper Company v. Moody, supra* [, 422 U.S. 405] at 418, 95 S.Ct. [2362] at 2372, 45 L.Ed.2d 280. *Accord, Franks v. Bowman Transportation Co.*, [424 U.S. 747,] 763, 96 S.Ct. 1251 [1264, 47 L.Ed.2d 444] [(1976)]. "To effectuate this 'make whole' objective, Congress [has] vested broad equitable discretion in the federal courts to 'order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement * * * with or without back pay * * *, or any other equitable relief as the court deems appropriate." *Id.* at 763, 96 S.Ct. at 1264. *Harper v. General Grocers Co., supra*, 590 F.2d at 716. Under this standard none of the remedial measures ordered by the district court *per se* went beyond the broad equitable powers specifically granted in § 706(g) of Title VII, 42 U.S.C. § 2000e–5(g). The problem is that there are insufficient findings in the record for us to evaluate the soundness of the district court's exercise of discretion and we therefore vacate parts of the judgment and remand for further findings and reconsideration. *See Rule v. International Ass'n of Bridge, Structural & Ornamental Ironworkers, Local Union No. 396*, 568 F.2d 558, 568 (8th Cir. 1977).

### C. *The Probationary Period*

The district court obviously had some basis for concern on this record that requiring Locke to go through a six-month probationary period, presumably giving him something less than the protection of a "just cause" clause in a typical collective bargaining agreement, would provide a ready pretext for further discrimination. There of course may well be valid nondiscriminatory reasons for requiring a probationary period. The probationary period has not been used to discriminate against Locke, however, and eliminating it may therefore be at odds with the equitable principle that the scope of the remedy should be tailored to the scope of the violation.

If the probationary period is a uniform requirement imposed by KCP&L on new employees for valid business purposes, we think Locke would be in the same position as other employees if he too was subject to it. If the probationary period in fact was not imposed uniformly, the district court may have been justified in exempting Locke from it in order to put him in the position he would have held but for the discrimination against him. *Cf. Kansas City Power & Light Co. v. NLRB*, 641 F.2d 553 (8th Cir. 1981) (another case involving same employer suggesting a possibility of erratic enforcement). We cannot tell what the outcome should be on this record, and the district court has not made adequate subsidiary findings to support this remedial measure.

Rather than make the substantial inquiry that may be required to resolve a matter of only peripheral importance in this case, we suggest that it may be more appropriate for the district court simply to require Locke to serve the six-month probationary period and retain jurisdiction over the case during that time. Such a resolution would provide opportunity for close scrutiny of any employment decision which Locke may claim to have a discriminatory taint, while allowing KCP&L to use the probationary period for valid business objectives. Of course any action disfavoring Locke would have to be viewed in the context of the finding of discrimination already made in this case.[11]

### D. *Promotion to Relief Man*

The district court apparently considered Locke qualified for a relief man job and thought Locke would have been promoted to relief man but for the discrimination against him. We cannot tell whether the court was of the view that the relief man job required essentially the same qualifications as the plant helper job or that Locke

had any additional qualifications required for the relief man job or for some other reason. In any event the findings concerning Locke's qualifications and KCP&L's promotion practices are inadequate for us to evaluate the promotion of Locke to relief man as a remedial measure.

■ A court can in appropriate circumstances order a promotion as make whole relief for a victim of discrimination, but cannot under Title VII properly order the promotion of an employee to a position for which he or she is not qualified. *Marquez v. Omaha District Sales Office, supra*, 440 F.2d at 1162–63; *see also Franks v. Bowman Transportation Co., supra*, 424 U.S. at 772 n.31, 96 S.Ct. at 1268 n.31; *Richerson v. Jones*, 551 F.2d 918 (3d Cir. 1977). *See generally* 2 A. Larson, Employment Discrimination § 55.23 (1980). Our research has not, however, discovered any cases precisely similar to this one, where a court has ordered a Title VII plaintiff who has suffered discrimination in the hiring process instated to a higher position than entry level.

■ There is some support for the district court's action in a series of cases providing for "job-skipping" where an employer has discriminatorily excluded some employees from whole lines of progression within the employer's work force. *E. g., Watkins v. Scott Paper Co.*, 530 F.2d 1159 (5th Cir.), *cert. denied*, 429 U.S. 861, 97 S.Ct. 163, 50 L.Ed.2d 139 (1976); *Rogers v. International Paper Co.*, 510 F.2d 1340, 1354 (8th Cir.), *vacated on other grounds*, 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29, *on remand*, 526 F.2d 722 (1975); *Long v. Georgia Kraft Co.*, 450 F.2d 557 (5th Cir. 1971); *see also United States v. City of Philadelphia*, 573 F.2d 802 (3d Cir.), *cert. denied*, 439 U.S. 830, 99 S.Ct. 105, 58 L.Ed.2d 123 (1978). Such

---

11. In this light, if the district court allows the probationary period and retains jurisdiction, further proceedings will not be on a clean slate and KCP&L should be required to carry the burden of persuasion that any dismissal of Locke is based entirely on legitimate, nondiscriminatory factors. *Compare International Bhd. of Teamsters v. United States*, 431 U.S. 324, 362, 97 S.Ct. 1843, 1868, 52 L.Ed.2d 396 (1977) (after finding of discrimination against class the burden may be on the employer to demonstrate legitimate reasons for denying employment opportunity to a member of the class) *with Burdine, supra*, 101 S.Ct. at 1095 (plaintiff's burden of persuasion as to existence of discriminatory disparate treatment).

"job-skipping" cases have involved lines of progression between lower and higher level jobs in a plant, where a certain amount of time in a lower level job is generally required before moving up to the next higher job. Victims of discriminatory exclusion from the whole line of progression, especially those who have worked in other jobs within a facility, may be left without any real remedy if, for example, they must take a reduction in pay to transfer into the line of progression at entry level. Courts have in this context carefully scrutinized the lower level jobs prerequisite for advancement within lines of progression and have allowed job-skipping to make whole victims of discrimination where it has specifically been found that the lower level jobs prerequisite is not justified by business necessity. But job-skipping is only appropriate where the beneficiary has demonstrated the skills or other qualifications legitimately required or the higher level job and the promotion is in a line of progression where a promotion is normally forthcoming after some interval of time in the lower level job. *Young v. Edgcomb Steel Co.*, 499 F.2d 97 (4th Cir. 1974).

Under the job-skipping cases the district court has discretion to order Locke instated as a relief man only if it makes the following findings: (1) that Locke had the particular skills or other job-related qualifications required by KCP&L for a relief man, (2) that the relief man position was in a line of progression upward from the plant helper position, that is, a plant helper would normally be promoted to relief man after some interval of acceptable performance as a plant helper, and (3) that the prerequisite service as a plant helper is not itself justified by business necessity aside from the skills or other qualifications to perform the relief man job. Moreover, in exercising its discretion we think the court should consider the possibility for making Locke whole economically by other means such as retroactive seniority, *see Franks v. Bowman Transportation Co., supra*, 426 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444, or front pay discussed below.

In any event, KCP&L does not appear to contend that Locke is not entitled to instatement as a plant helper on the basis of the district court's discrimination finding that we have affirmed above and to nondiscriminatory consideration for promotion in the future. Therefore, regardless of the decision on the relief man issue, Locke is in this posture of the case entitled to no less than instatement in a plant helper position.

### E. *Backpay*

In view of our treatment of the promotion issue, the backpay award must be amended. If the district court finds that Locke is entitled under the above standards to a relief man position, Locke would be entitled to backpay at the relief man rate from the date his entitlement began, as under the present order. Otherwise, the backpay award must be recomputed at the lower plant helper rate for the year 1979 and any subsequent period of backpay award.

For the reasons stated above, the judgment of the district court is affirmed in part, vacated in part and remanded to the district court.