Jesse E. EDWARDS, Plaintiff,

v.

Donald P. HODEL, et al., Defendants.

Civ. A. No. 85–C–2444.

United States District Court, D. Colorado.

May 29, 1990.

Richard LaFond, Mark Bove, Denver, Colo., for plaintiff.

Chalk Mitchell, U.S. Atty., Denver, Colo., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

CARRIGAN, District Judge.

This action was filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 623(a) and (d). Plaintiff, Jesse A. Edwards, claims that the defendant, United States Department of Interior, Minerals Management Service, failed to promote him: (1) because he is Black; (2) because he is over forty (40) years old; and (3) in retaliation for protected EEO activity. MMS is an employer within the meaning of 42 U.S.C. § 2000e(b).

## I. GENERAL BACKGROUND.

Federally owned oil and gas exploration rights are leased to private persons by the Department of Interior. The Royalty Management Program, located in Lakewood, Colorado, handles accounting for the lease payments. The Lakewood office currently employs over 500 people. Prior to October 1982, this operation was part of the United States Geological Survey ("USGS"). During 1981, it became known that a new agency, Minerals Management Service ("MMS") would be created, and that a massive reorganization would be undertaken, creating hundreds of new jobs. The process used to fill these and subsequent vacancies is the subject of this litigation.

Plaintiff, a Black male, began his employment in USGS's Los Angeles office in May 1976 as an accountant, grade GS–9. Subsequently, he was promoted to accountant, grade GS–11. In September 1979, he was promoted to Supervisory Accountant, GS–12. In January 1982, he transferred to the Lakewood, Colorado, Royalty Management Program. His position became part of MMS at its inception on October 2, 1982.

During 1981, 1982 and 1983, the plaintiff applied for numerous GS–12, GS–13 and GS–14 positions in MMS and its predecessor units. He was rejected for promotion to any GS–13 or GS–14 position, and filed complaints of discrimination with reference to the failure to promote. These complaints eventually formed five agency cases, with five corresponding EEOC case numbers, X059, X073, X074, X075 and X052[1]. Eventually, the first four cases

1.

Summary of Plaintiff's Complaints

| EEOC # | Position(s) | Date of Application |
|--------|-------------|---------------------|
| X059 | Supervisory Accountant Grade 13/14 | Summer '81 |
| | Supervisory Accountant Grade 12/13 | Summer '81 |
| X073 | Supervisory Accountant Grade 13 | 3/26/82 |
| X074 | Auditor Grade 13 | 9/82 |
| X075 | Supervisory Accountant Grade 13 | 9/82 |
| X052 | Supervisory Accountant Grade 13 | 8/83 |
| | Supervisory Production Analyst Grade 13 | |
| | Production Manager Grade 13 | |

were consolidated for hearing before the EEOC and for final agency decision. The fifth, X052, was subject to a separate hearing and final agency decision, as well as later orders from the EEOC.

## II. THE COMPONENT EEOC CASES.

While it is unnecessary to detail the facts of all the component EEOC cases, a brief discussion is warranted. EEOC case number X059 involved eleven vacancy announcements. However, only one, 81–226, involved a promotion to Grade 13, and a career ladder to Grade 14.[2] Therefore, I will limit my discussion of case number X059 to vacancy announcement 81–226.

■ Plaintiff applied for a Supervisory Accountant GS–13/14 position in the summer of 1981. It is undisputed that he was qualified for this position. The selectee was William Trujillo. While the plaintiff's educational background is and then was superior to Trujillo's [3], the work experience of both candidates was then comparable. However, a significant part of Trujillo's experience was gained via a "detail" to the Royalty Management Working Group ("Working Group"). A detail is a temporary assignment of an employee to another position. Ron Jones, the *de facto* selecting official for vacancy announcement 81–226, indicated that Trujillo's detail experience was a substantial factor in the selection of Trujillo over the plaintiff. But for Trujillo's detail to the working group, the plaintiff's education and work experience would have been superior to Trujillo's.

Details are a legitimate method of temporarily reassigning an employee to a different job. However, if the detail is used to circumvent the competitive selection process (discussed *infra* ), it is improper. This is true regardless of its availability to one class of employees, or all employees.

Unfortunately, it appears that, at the time in question, details in MMS were only being made available to non-Black employees. This fact exacerbated the discrimination problem, eliminating any chance of advancement by Blacks through this channel, and undermining the agency's affirmative action program. I conclude that the detail of Trujillo, because it was an employment advantage made available only to non-Black employees, was improperly used to pre-select a non-Black candidate for the vacant position in question.

Given this improper employment of the detailing procedure, and the fact that this detail was not available to Blacks, I conclude that the experience gained by Trujillo through his detail should not have been considered when evaluating the relative credentials of the plaintiff and Trujillo. When Trujillo's detail experience is discounted, there is no question that the plaintiff's education and work experience, in both the public and private sectors, was superior. Thus he should have been chosen as the candidate most qualified to fill the vacancy.

EEOC case numbers X073, X074 and X075 have similar facts. The eventual selectee for each of these positions was, previous to selection, either detailed to the vacant position, temporarily assigned to the position, or given additional responsibilities which encompassed those of the new position. Selecting officials consistently cited experience thus acquired as an important factor in choosing the successful applicant. It is apparent in these instances that details were improperly employed to pre-select appointees for vacant positions, and I so conclude.

EEOC case number X073 has one distinguishing factor. In August 1981, vacancy announcement CR–180 was published, and a best qualified list was created (see procedure below). Plaintiff was on the best qualified list, but Michael Miller (the eventual selectee) was not. The vacancy announcement was then withdrawn. The

---

2. "Career ladder positions", designated by two grades (i.e. GS–13/14), provide the selectee a promotion to the higher grade after one year, assuming satisfactory performance.

3. Plaintiff has a Bachelor of Science degree from the University of Southern California, (major in accounting), and a Masters in Business Administration from Pepperdine University (major in management). Mr. Trujillo does not have any advanced degree.

stated reason for its withdrawal was a temporary hiring freeze. However, during this time, other MMS positions were filled.

After withdrawal of the vacancy announcement, Miller was detailed into the position. Nine months later, vacancy announcement CR–88 was issued for the identical position. Miller made the best qualified list, and was selected. Again, the experience Miller had gained during the detail was the deciding factor. Miller is not Black.

## III. THE COMPETITIVE SELECTION PROCESS.

MMS and its predecessor, USGS, had established personnel procedures to fill job vacancies. A supervisor who had a vacancy informed the personnel department. Personnel issued a "Vacancy Announcement," and interested parties submitted applications. Personnel then screened the applications to determine which applicants met the vacancy's minimum requirements. Minimally qualified applicants were submitted to a "Rating and Ranking Panel,"[4] that used a point system to evaluate each applicant. The rating and ranking panel then compiled a list of the best qualified applicants ("Best Qualified List"). That list was then alphabetized and sent to the supervisor ("Selecting Official"). The selecting official conducted interviews and made a selection. When making a selection, the selecting official was allowed to consider only an applicant's knowledge, ability, skills and other credentials.[5]

The improper use of details unfairly undermined this process. MMS has admitted that "the deciding factor of selection tends to be the detail experience afforded the selectee." Proposed Agency Disposition, March 12, 1984 (Plaintiff's exhibit 1–D page 8). The cited exhibit concludes that: "the policy (use of details) as is tended to act as a barrier against this employee (plaintiff) regarding assignment to PAAS. Further this policy excludes by allowing the details to PAAS to be primarily non-minorities. Hispanics, another protected class appears to be afforded the opportunity—not true of the complainant's protected class (Blacks)."

Thus it seems clear that the agency was aware that details were employed in a manner that unfairly discriminated against qualified Blacks.

## IV. RELIEF PREVIOUSLY GRANTED.

The EEOC Complaints Examiner, Juan Vigil, concluded that the plaintiff had been the victim of discrimination in four cases. As a result, Vigil recommended that the plaintiff be promoted to a GS–13 position retroactive to June 1981, and to a GS–14 position retroactive to June 1982.

MMS accepted part of the EEOC's recommended findings[6] and provided the plaintiff some of the recommended relief. On November 27, 1985, the plaintiff was promoted to a GS–510–13 Supervisory Accountant position, retroactive to June 13, 1982. In connection with the plaintiff's final EEOC claim (X052), on February 24, 1989, the plaintiff was given a lateral transfer to a GM–301–13 Supervisory Production Analyst position. Since this position did not involve a pay raise, no retroactive action was necessary.

In light of the relief previously granted, I conclude that only the following issues remain unresolved:

(1) Did the selection of Trujillo for vacancy announcement 81–226 violate the plaintiff's rights protected by Title VII?

(2) If the defendant violated the plaintiff's rights protected by Title VII, should the plaintiff be retroactively promoted to a GS–13 position as of

---

**4.** Rating and Ranking panels are made up of MMS employees who are in positions rated at least as high as the position to be filled. If an applicant is applying for a lateral transfer (no increase in grade), his application does not go to the rating and ranking panel. Instead, it automatically makes the best qualified list.

**5.** These criteria are commonly referred by the acronym KASOC.

**6.** MMS admitted discrimination and retaliation in two of the four consolidated EEOC cases (X073 and X075).

June 1981, and a GS–14 position as of June 1982?

(3) Should the plaintiff be promoted to a GS–15 position, and if so, as of what date?

(4) Should MMS be ordered to modify its affirmative action program?

## V. TITLE VII.

### A. Race Discrimination.

*Cooper v. Federal Reserve Bank of Richmond,* 467 U.S. 867, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984) contains an excellent review of the method used by the Supreme Court to evaluate a Title VII case.

"A plaintiff bringing a civil action for a violation of ... Title VII ... has the initial burden of establishing a *prima facie* case that his employer discriminated against him on account of race, color, religion, sex, or national origin. A plaintiff meets this initial burden by offering evidence adequate to create an inference that he was denied an employment opportunity on the basis of a discriminatory criterion enumerated in Title VII. A plaintiff alleging one instance of discrimination establishes a *prima facie* case justifying an inference of individual racial discrimination by showing that he (1) belongs to a racial minority, (2) applied and was qualified for a vacant position the employer was attempting to fill, (3) was rejected for the position, and (4) after his rejection, the position remained open and the employer continued to seek applicants of the plaintiff's qualifications. (Citation omitted) Once these facts are established, the employer must produce 'evidence that the plaintiff was rejected, or someone else preferred, for a legitimate, nondiscriminatory reason.' (Citation omitted) At that point, the presumption of discrimination drops from the case and the district court is in a position to decide the ultimate question in the suit: whether the particular employment decision at issue was made on the basis of race."

*Cooper,* at 874–875, 104 S.Ct. at 2798–2799 [Citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) ].

It is undisputed: (1) that the plaintiff belongs to a racial minority; (2) that he applied and was qualified for, (he made the best qualified list) a vacant position that MMS was trying to fill (vacancy announcement 81–226); (3) that he was rejected; and (4) that after his rejection, MMS continued to seek applicants of his qualifications or less (Trujillo). Therefore, the plaintiff has established a *prima facie* case of discrimination, and the defendant has the burden to articulate non-discriminatory business reasons for preferring Trujillo over the plaintiff. *Cooper,* 467 U.S. at 875, 104 S.Ct. at 2799.

Far from articulating any non-discriminatory reason for preferring Trujillo, the evidence indicates that the defendant relied on improper reasons. Ron Johnson, the selecting official, admitted that Trujillo's detail to the working group was a significant factor in his selection. MMS itself recognized that details were used improperly. In its proposed disposition, MMS stated that experience gained in details tended to be the "deciding factor" in making selections. I have already concluded that Blacks were improperly excluded from details, and that experience gained through discriminatory detailing should not have been considered when comparing the plaintiff and Trujillo. Therefore, I conclude that the defendant has failed to articulate a non-discriminatory reason for preferring Trujillo over the plaintiff.

Under the *McDonnell Douglas* and *Burdine* standard, the plaintiff has established a *prima facie* case of discrimination. Defendant has not articulated a non-discriminatory reason for preferring Trujillo. Therefore, I conclude that the plaintiff must prevail on his Title VII claim as to vacancy announcement 81–226.

### B. Retaliation.

I have already concluded that the defendant discriminated against the plaintiff on the basis of race, in violation of Title VII,

regarding vacancy announcement 81–226. This position, a Grade GS–13/14, is the first that the plaintiff claims he was illegally denied. Therefore, there is no possibility of retaliation in relation to this position. Even if I conclude that the defendant denied the plaintiff a later position in retaliation for his protected EEO activity, no additional relief would be available. Therefore, the plaintiff's retaliation claim is moot.

## VI. AGE DISCRIMINATION—ADEA.

■ The elements of a *prima facie* case of age discrimination are identical to those for race discrimination under Title VII. *Hall v. American Bakeries Co.*, 873 F.2d 1133, 1134 (8th Cir.1989). It is undisputed that the plaintiff was over forty years old at all relevant times. I have already concluded that the plaintiff applied for a position for which he was qualified, and that he was not promoted to that position. This leaves the final element, that the defendant promoted an individual not in the plaintiff's protected class. I conclude that the plaintiff failed to present sufficient evidence to carry his burden of proof as to this element, and therefore he has failed to establish a *prima facie* case of age discrimination. Therefore, on the plaintiff's ADEA claim, I find for the defendant.

## VII. PLAINTIFF'S REMEDY.

Plaintiff has asked this court, *inter alia*, to promote him retroactively to a GS–13 as of June 1981, to a GS–14 as of June 1982, and to a GS–15 as of some time thereafter. I will address each requested promotion individually.

### A. Promotion to Grades 13 & 14.

■ Plaintiff was denied promotion to Supervisory Accountant, Grade 13/14 in June 1981 in violation of 42 U.S.C. § 2000e *et seq.* Once a court finds unlawful discrimination, 42 U.S.C. § 2000e–5(g) empowers it to order any appropriate remedy. Plaintiff seeks retroactive promotion to grade 13, effective June 1981, and to grade 14 effective June 1982, including back pay and other benefits. I conclude that those promotions would be appropriate to make

the plaintiff whole and that he is entitled to them.

### B. Job Skipping.

Citing *Pecker v. Heckler*, 801 F.2d 709 (4th Cir.1986), the plaintiff argues that the court should place him in a higher position (GS–15) than that to which he would have been promoted in 1981 had the defendant not discriminated against him. Plaintiff's reliance on this case is misplaced.

In *Pecker*, the position that the plaintiff applied for was upgraded during pendency of the case. It is true that the court ordered that she be put in a position one grade higher than the one for which she had applied. But it was in fact the same job. This situation is much closer to the "career ladder" positions discussed earlier. The instant plaintiff applied for a grade 13/14 position. There is no dispute that if he had been placed into that position, he would have been elevated to a grade 14 after a sufficient time in grade 13, absent circumstances not here present.

The other cases cited by the plaintiff indicate that job skipping is appropriate where an employer has discriminatorily excluded some employees from whole lines of progression within the employer's workforce. *See Locke v. Kansas City Power & Light Co.*, 660 F.2d 359, 368–369 (8th Cir. 1981); *Watkins v. Scott Paper Co.*, 530 F.2d 1159 (5th Cir.) *cert. denied*, 429 U.S. 861, 97 S.Ct. 163, 50 L.Ed.2d 139 (1976). There is no evidence in this case that the plaintiff was excluded from the entire line of progression to the grade 15 level. To the contrary, the plaintiff has held several positions that are prerequisites for the positions he now seeks. I decline to extend the job skipping concept to situations beyond those where it has traditionally been applied. Therefore, the plaintiff is not entitled to a promotion to a grade 15 position.

### C. Other Declaratory And Injunctive Relief.

Plaintiff seeks declaratory and injunctive relief regarding MMS's affirmative action program. By agreement of the parties, this issue has been bifurcated from the rest

432

of the case. Therefore, it is not necessary for me to rule on it at this time.

## VIII. ORDER.

IT IS ORDERED that:

(1) Plaintiff shall be retroactively promoted to grade GS–13, including back pay and other benefits, as of the same day Trujillo assumed the position described in vacancy announcement 81–226;

(2) Plaintiff shall be retroactively promoted to grade GS–14, including back pay and other benefits, effective one year after his promotion to GS–13;

(3) The parties and their counsel shall meet and confer within thirty days of this order to calculate the amount owed to the plaintiff in back pay and other benefits. Further, the parties are ordered to report the results of this meeting to this court in writing within eleven days after their meeting; and

(4) The parties and their counsel shall meet and confer within thirty (30) days of this order in a good faith attempt to reach a stipulation that would eliminate the need for any further hearing on the proposed injunctive or declaratory relief. Further, the parties are ordered to report the results of this meeting to this court in writing within eleven days after their meeting. If the parties conclude that a remedies hearing is necessary, then each party shall submit briefs, proposed findings of fact, proposed conclusions or law, and a proposed order within eleven (11) days after their meeting. Either party, or both, may apply for an expedited hearing on any further remedies sought.